**Carson R. AANENSON, Appellant (Petitioner Employee–Claimant),**

v.

**STATE of Wyoming ex rel., WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Respondent Objector).**

No. 92–81.

Supreme Court of Wyoming.

Dec. 8, 1992.

Michael Schilling, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen., and J.C. DeMers, Sr. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT and GOLDEN, JJ.

CARDINE, Justice.

Carson R. Aanenson seeks review of a district court order affirming the denial of worker's compensation benefits by a hearing officer. Mr. Aanenson was diagnosed with a ruptured disc in 1986 but neglected to file a report or claim for worker's compensation. In 1990, Aanenson filed an injury report and then a claim for coverage for an operation on the same ruptured disc. The benefits were denied because appellant missed the statutory deadline provided in W.S. 27–12–503 (1977).

We affirm.

Mr. Aanenson presents the following issue:

I. Whether appellant's claims for a ruptured dis[c] injury are timely filed within one year from the date of the treating physician's determination that the condition requires surgical correction.

The State presents it this way:

I. Does substantial evidence exist to support the hearing examiner's finding that the statute of limitations began to run in May of 1986 and that the appellant's claim was barred pursuant to W.S. § 27–14–503.

## FACTS

Mr. Aanenson was first employed by Roger and Jean Schlump, the sole proprietors of Ace Salvage, in 1985. The Schlumps hired him to manage and operate their salvage yard, which required strenuous lifting. Throughout the first two to three years, Mr. Aanenson was sporadically paid small sums, despite working 300–

400 hour months. However, in 1988, the Schlumps incorporated Ace Salvage, made Aanenson vice president, and issued him shares in the corporation.

While moving a number of car transmissions and car rear ends in the spring of 1986, Aanenson gradually developed severe pain in his left leg and buttocks. In early May, the pain became intolerable, forcing a visit to the emergency room. Based upon the hospital's examination and advice from his employer, Mr. Aanenson scheduled an appointment with Dr. Kieffer.

Dr. Kieffer examined Mr. Aanenson and ordered a CAT scan of Mr. Aanenson's lower back. Based upon the exam and CAT scan, Dr. Kieffer explained to Mr. Aanenson that he had ruptured a disc, pinched a nerve, and that he had a floating cracked vertebra. Mr. Aanenson did not file a worker's compensation claim or accident report. Mr. Aanenson and Dr. Kieffer agreed upon a conservative treatment approach, including bed rest, medication, stretching exercises, and time off from work. After about two months, Mr. Aanenson returned to work and gradually was able to perform his same duties.

Over the next three years, Mr. Aanenson continued to diligently perform his duties at the salvage yard and was able to endure whatever pain existed. In 1990, however, the salvage company began a new project which required more strenuous lifting and moving than had previously been needed. The severe pain returned. Mr. Aanenson consulted a second physician, Dr. Wirt. Dr. Wirt diagnosed a ruptured disc at L5–S1 and confirmed that it was the same disc injury as in 1986. Dr. Wirt recommended surgery.

On December 3, 1990, Mr. Aanenson filed a worker's compensation employee injury report, and an employer's report was also completed. Dr. Wirt and Mr. Aanenson set a date for surgery, and Dr. Wirt sent in a claim for worker's compensation coverage. The Division of Worker's Compensation denied coverage of the surgery because they viewed the 1990 injury as pre-dating to 1986, and thus the time for filing the 1986 claim had passed. Mr. Aanenson then re-quested a hearing before the hearing officer, who also denied his claims. Aanenson appealed the decision to the district court, who then affirmed the hearing officer's denial. Mr. Aanenson now asks us to review the district court order.

## STANDARD OF REVIEW

The standard to which we must adhere in reviewing agency factual findings is as follows:

"We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence."

*State ex rel. Wyoming Worker's Compensation Div. v. White*, 837 P.2d 1095 (Wyo. 1992), *quoting Hohnholt v. Basin Electric Power Co-op*, 784 P.2d 233, 234 (Wyo.1989); *see also Trout v. Wyoming Oil & Gas Conservation Comm'n*, 721 P.2d 1047, 1050 (Wyo.1986). Agency conclusions of law, however, are not afforded the same deference. Thus, our standard of review for agency conclusions of law is as follows:

If the conclusion of law is in accordance with law, it is affirmed, *[Department of Revenue and Taxation of State of Wyoming v.] Casper Legion Baseball Club, Inc.*, 766 [767] P.2d 608 [Wyo.1989]; if it is not, it is to be corrected. *Rocky Mountain Oil & Gas Ass'n [v. State Board of Equalization]*, 749 P.2d 221 [Wyo.1987].

*Employment Security Comm'n v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871, 86 A.L.R.4th 295 (Wyo.1990).

When we review mixed questions of law and fact, our standard has been stated this way:

When an agency's determinations contain elements of law and fact, we will not treat them as findings of fact. We ex-

tend deference only to agency findings of "basic fact." When reviewing a finding of "ultimate fact," we divide the factual and legal aspects of the finding to determine whether the correct rule of law has been properly applied to the facts. If the correct rule of law has not been properly applied, we do not defer to the agency's finding but correct the agency's error in either stating or applying the law.

*Union Pacific R.R. Co. v. State Bd. of Equalization,* 802 P.2d 856, 860–61 (Wyo. 1990).

 Before choosing the appropriate standard of review, we must determine whether we are being asked to review a finding of fact, a conclusion of law, or a mixed question of fact and law. Distinguishing between fact and law is a sometimes difficult, if not impossible, task because "[m]atters of law grow downward into roots of fact, and matters of fact reach upward, without a break, into matters of law." Ray A. Brown, *Fact and Law in Judicial Review,* 56 Harv.L.Rev. 899, 904 (1943), *quoting* Dickinson, Administrative Justice and the Supremacy of the Law 55 (1927).

In discussing distinctions between issues of fact and issues of law in the area of the worker's compensation statute of limitations, we said, in *Claim of Grindle,* 722 P.2d 166, 169 (Wyo.1986):

> "It is the duty of the trial judge as finder of fact to determine and find by a preponderance of the evidence whether there was a compensable injury, and, if so, when it was actually suffered by an employee...." *In the Matter of Barnes,* Wyo., 587 P.2d 214 (1978); and *Big Horn Coal Company v. Wartensleben,* Wyo., 502 P.2d 187 (1972).

In *Claim of Nielsen,* 806 P.2d 297, 299 (Wyo.1991), we commented further:

> While it is true a claimant has the burden of proving the actual time of disability and its cause, for purposes of establishing the date of occurrence of an injury to ascertain the time from which the statute of limitations begins to run is a legal question and not one of fact. [citations omitted]

From these excerpts, it appears that our issue is a mixed question of law and fact.

 A "mixed question of law and fact" is a conclusion reached or a finding made by an agency through application of legal precepts to the historical and narrative events of a particular case. *Union Pacific R.R. Co.,* 802 P.2d at 860. Professor Davis explained the concept using the most common of issues: Was the defendant negligent? He divided the issue into two questions: (1) What did the defendant do? (an issue of historical fact), and (2) Do defendant's actions constitute negligence? (an issue of law). 5 Davis, *Administrative Law Treatise* § 29:9 at 367 (2d ed. 1984).

The historical actions and inactions of Mr. Aanenson, as determined by the hearing officer, are historical or basic facts. However, whether or not W.S. 27–12–503 acts as a bar to Mr. Aanenson's claim when applied to the basic facts is an issue of law. Therefore, the findings made by the hearing officer concerning appellant's historical actions are given due deference, but the conclusion that W.S. 27–12–503 bars appellant's claim will be affirmed only if it is in accordance with law.

## ANALYSIS

*Findings of Fact*

The hearing officer expressed his findings of basic fact as follows:

> This office is persuaded that Employee–Claimant [appellant] ruptured his L5–S1 disk in 1986. This medical condition was diagnosed in 1986, and the diagnosis was communicated to Employee–Claimant. Employee–Claimant has no doubts as to the fact that this diagnosed condition was caused by his Ace employment. Although able to delay surgical treatment through the date of this hearing, Employee–Claimant nevertheless was totally disabled for two (2) months in 1986, and since then has had intermittent periods where his medical condition prevented his engaging in unrestricted work effort with Ace. Despite this, Employee–Claimant did not file any worker's compensation accident report until approxi-

mately December 5, 1990, and did not file any worker's compensation claim until December 17, 1990.

Each of these findings made by the hearing officer is supported by Mr. Aanenson's testimony and the record. Mr. Aanenson testified that he was informed of the ruptured disk by Dr. Kieffer in 1986; that he believed the injury happened at Ace Salvage; that he was able to postpone surgery; that he was unable to work for two months after the injury in 1986; that he experienced periods where he could not fully perform his normal duties during the period between 1986 and 1990; and that he failed to file any worker's compensation form until December of 1990. Therefore we hold these findings, as to the basic facts, to be supported by substantial evidence and will not substitute our judgment for that of the hearing officer.

*Conclusions of Law*

■ Mr. Aanenson makes only one legal argument for our review: He argues that this court has adopted a "per claim" statute of limitations through three cases decided since 1986. He admits that without the intervention of these cases his claim would be barred under pre–1987 law. In order to address Mr. Aanenson's argument, we feel it necessary to review the cases construing our worker's compensation statute of limitations.

When Mr. Aanenson was initially diagnosed with a ruptured disk, the statute of limitations in effect at the time of injury and which controls was W.S. 27–12–503 (1977). *Seckman v. Wyo–Ben, Inc.*, 783 P.2d 161, 166 (Wyo.1989); *Wyoming Refining Co. v. Bottjen*, 695 P.2d 647, 648 (Wyo. 1985). Wyoming Statute 27–12–503 (1977) provided:

(a) No order or award for compensation involving an injury which is the result of a single brief occurrence rather than occurring over a substantial period of time, shall be made unless in addition to the reports of the injury, an application or claim for award is filed with the clerk of court in the county in which the injury occurred, within one (1) year after the day on which the injury occurred *or for injuries not readily apparent, within one (1) year after discovery of the injury by the employee.* The reports of an accident do not constitute a claim for compensation.

(b) The right of compensation for injury which occurs over a substantial period of time is barred unless a claim for benefits is filed with the clerk of the district court within one (1) year after a diagnosis of injury is first communicated to the employee, or within three (3) years from the date of last injurious exposure to the condition causing the injury, whichever occurs first.... [emphasis added]

(This provision was renumbered as W.S. 27–14–503 in 1986 and was amended again effective March 7, 1989. However, these amendments do not affect the outcome of this case.)

■ The worker's compensation statute of limitations has been consistently interpreted by this court. A cause of action under the Worker's Compensation Act does not arise until the claimant has suffered a "compensable injury." *In the Matter of Barnes*, 587 P.2d 214, 218 (Wyo.1978); *Big Horn Coal Co. v. Wartensleben*, 502 P.2d 187, 188 (Wyo.1972); *Baldwin v. Scullion*, 50 Wyo. 508, 62 P.2d 531, 535, 108 A.L.R. 304 (1936). Therefore, the applicable statute of limitations does not begin running until the claimant has suffered a "compensable injury." *Barnes*, 587 P.2d at 219; *Baldwin*, 50 Wyo. at 530, 62 P.2d at 539. In addition, a single employment accident may create more than one "compensable injury" which in turn results in more than one date for the start of the statute of limitations. *Claim of Nielsen*, 806 P.2d at 299; *State ex rel. Wyoming Worker's Compensation Div. v. Malkowski*, 741 P.2d 604, 605 (Wyo.1987); *Pacific Power & Light Co. v. Rupe*, 741 P.2d 609, 610 (Wyo. 1987); *Barnes*, 587 P.2d at 218.

■ A "compensable injury" occurs, starting the statutory period, when it becomes reasonably clear from the nature and seriousness of the injury that it is compensable. *Big Horn Coal Co.*, 502 P.2d at 188; *Barnes*, 587 P.2d at 219; 3 Larson, *The Law of Workmen's Compen-*

sation § 78.40–.41(a) at 15–155 (1983). To further illuminate this general concept we examine several of the applicable cases.

Our approach first began to evolve in *Baldwin*. Mr. Scullion, the claimant, was injured at work when his hip was struck by a large metal pipe in July of 1934. He was diagnosed with arthritic rheumatism, given medicine and then permitted to return to work. Scullion consulted a second physician who diagnosed the hip injury as a fracture. In April 1935, after consulting a bone specialist, Scullion filed reports of the accident. After Scullion had received some benefits under worker's compensation, his employer objected because the claim was not timely filed. *Baldwin*, 50 Wyo. at 514–16, 62 P.2d at 532–33. After reviewing the law in other jurisdictions, we held that Scullion had timely filed for the fracture because it was not diagnosed and thus not discovered until January of 1935. *Id.*, 50 Wyo. at 531, 62 P.2d at 539.

In *Big Horn Coal Co.*, the claimant (Wartensleben) suffered a back injury that was originally diagnosed as nervousness and treated with muscle relaxants. Later, however, after having his back x-rayed, Wartensleben was informed that he had a more serious injury. We held that Wartensleben had not suffered a "compensable injury" until he was informed of the more serious injury. In so holding we said:

> [W]here an employee in the course of his employment sustains an apparent *trivial injury* which does not result in present disability and which would not reasonably be expected to cause future disability, but which injury in fact over a period of latency does cause future disability, the time for giving notice of the occurrence of the injury to the employer runs from the time when it becomes apparent that such injury has resulted in, or is likely to cause, compensable disability.

*Big Horn Coal Co.*, 502 P.2d at 188, *citing Potter v. Midland Cooperatives, Inc.*, 248 Minn. 380, 80 N.W.2d 59, 61 (1956).

In *Barnes*, the claimant was injured at work in 1967 and was diagnosed with a *possible* herniated disc. The claimant (Barnes) filed a worker's compensation in-jury report, and the cost of the necessary treatments were covered. Almost twenty years later, Barnes filed for further coverage because the injury required surgery. We concluded that the claimant could not reasonably be expected to comprehend that his injury was compensable until he was affirmatively told that he suffered from a herniated disc. In reaching this conclusion, we emphasized that the claimant was originally diagnosed with only a possible herniated disc.

In *Grindle*, we framed our analysis, of when the statute of limitations begins to run, using language specifically found in W.S. 27–12–503(a). We said that the statute begins when the injury becomes "readily apparent." Despite the different phraseology, we applied the same basic test as described and used in *Baldwin*, *Big Horn Coal Co.* and *Barnes*. In fact, we cite the *Barnes* and *Baldwin* line of cases which established the "compensable injury" rule. *Grindle*, 722 P.2d at 169. In reaching the conclusion that Grindle's injury was "readily apparent" when she was originally injured, we stressed that she was a licensed practical nurse when the injury occurred and that she had back surgery before she filed any claim.

As demonstrated by the foregoing cases, when determining the time a particular injury became compensable, it should be asked: When would a reasonable person, under the circumstances, have understood the full extent and nature of the injury and that the injury was related to his or her employment? The statute of limitations starts running when that date is fixed.

In light of the analysis elicited from our precedents and our ruling in *Grindle*, we find that the hearing officer properly concluded that Mr. Aanenson suffered a compensable injury in 1986 when he was informed by Dr. Kieffer that he had a ruptured disc, a pinched nerve, and a floating cracked vertebra and was unable to work for two to three months. For whatever reason, he chose not to file a worker's compensation claim. The statute of limitations, however, began running in 1986 when he was diagnosed and knew the na-

ture and extent of his disabling injury, and he is barred by W.S. 27–12–503 from any claim for coverage of his ruptured disc at L5–S1.

As the hearing officer concluded, the facts of *Grindle* closely mirror Mr. Aanenson's claim. Both Grindle and Mr. Aanenson suffered lower back injuries which caused severe initial pain but after a period of time diminished. Neither Grindle nor Aanenson filed an injury report or a worker's compensation claim when they were originally injured. In addition, they both were uniquely aware that they had a serious injury, Grindle because she was a licensed nurse and had surgery performed, and Aanenson because he was diagnosed with and informed of the exact nature and gravity of his injury. In his testimony concerning the discussion with Dr. Kieffer in 1986, appellant replied:

> I went in, filled out the reports, Dr. Kieffer examined me and told me that I had a *ruptured disc and [a] pinched nerve, a piece of floating bone in my back and a cracked vertebra.* [emphasis added]

Even if the *Grindle* decision did not exist, application of the general analysis developed from *Baldwin* would require the same conclusion. A reasonable person would realize the serious nature of his or her injury when informed of a list of injuries like those expressed in Mr. Aanenson's testimony. These are not trivial injuries nor was there any doubt as to the occurrence of the injuries at Ace Salvage. Coupling this with the fact that Mr. Aanenson had to miss several months of work due to the pain, it is clear he should have understood the compensable nature of his injury.

■ Returning to Mr. Aanenson's argument that we have adopted a "statute of limitations per claim" doctrine since *Grindle,* we agree with the district court and affirm the hearing officer's conclusion against this proposition.

Mr. Aanenson claims that our decisions in *Malkowski, Rupe* and *Nielsen* have changed the law since *Grindle.* We have long held that an accident may result in two compensable injuries which manifest at separate times. *Baldwin,* 50 Wyo. at 531, 62 P.2d at 539; *Barnes,* 587 P.2d at 218. As the hearing officer concluded, each of these cases is distinguishable because each involved a second compensable injury. In *Malkowski* the claimant's wrist injury deteriorated to a distinguishably worse condition; in *Rupe* the claimant's knee injury required additional surgery; and in *Nielsen* the claimant suffered pain in different parts of his back each time a second "compensable injury" occurred and his back deteriorated to the point where he was declared to have a 100 percent disability.

In Mr. Aanenson's case, there is no evidence that this is a second "compensable injury." Instead, Dr. Wirt's testimony states that his diagnosis in 1990 is the same as Dr. Kieffer's in 1986. Perhaps if there was some evidence that this 1990 claim involved an increase in herniation of the disc, then there might arguably be a second compensable injury. However, that evidence does not exist in the record.

In addition, Mr. Rupe, Mr. Malkowski and Mr. Nielsen all filed timely reports and claims with the Worker's Compensation Division when they were first injured. Mr. Aanenson failed to file any report or claim with the Worker's Compensation Division until 1990, over four years after his initial injury was diagnosed.

As both the hearing officer and the district court recognized, our decision is harsh for Mr. Aanenson. We must, however, abide by our law and precedent, and we cannot say that the hearing officer erred in applying the law. Mr. Aanenson's argument that the worker's compensation statutes should be construed in favor of the worker, *see generally Seckman,* 783 P.2d at 165, has not fallen upon deaf ears. However, we are not at liberty to create our own exceptions to language adopted by our legislature. *Seckman,* 783 P.2d at 165. Additionally, we note the important role the statute plays in our worker's compensation scheme, by providing certainty and a ripe opportunity to investigate an injury. Holding for Mr. Aanenson would be to ignore these important policies.

## CONCLUSION

We hold that the hearing officer's findings of fact are supported by substantial evidence and that his conclusions of law are in accordance with the law. Therefore, we must affirm the denial of benefits to Mr. Aanenson.