WYOMING DEPARTMENT OF EM-PLOYMENT, DIVISION OF UNEM-PLOYMENT INSURANCE, Appellant (Respondent),

v.

WYOMING RESTAURANT AS-SOCIATES, INC., Appellee (Petitioner).

No. 92–129.

Supreme Court of Wyoming.

Sept. 24, 1993.

Joe Scott, Sr. Asst. Atty. Gen., for appellant.

No appearance by appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

After exhausting the administrative process without success, an employer successfully argued to a district court that the Division of Unemployment Insurance (division) was estopped from assigning it the delinquency rate for unemployment insurance contributions. On appeal to this court, the division asserts that the district court erred in applying estoppel, that the employer's protests were untimely, and that the employer is precluded from obtaining judicial review without first paying delinquent contributions under protest.

We reverse in part and affirm in part.

## I. ISSUES

Appellant, the division, raises the following issues:

### A.

Whether the Unemployment Insurance Commission's decision that the facts of the case show the division staff is not estopped from collecting the full amount of tax it claims and assigning the penalty rate for 1991 to Wyoming Restaurant Associates, Inc., even if estoppel lies against the state, is supported by substantial evidence and is in conformity with law?

### B.

Whether the Unemployment Insurance Commission's decision that estoppel does not lie against the division staff to prevent it from collecting the 1991 tax at the penalty rate is in conformity with law?

### C.

Whether the Unemployment Insurance Commission's decision dismissing Wyoming Restaurant Associates, Inc.'s, appeal from its 1988, 1989, and 1991 [sic] tax rate notices, as not filed within the statutory thirty-day time limit, is supported by substantial evidence and is in conformity with law?

### D.

Whether Wyoming Restaurant Associates, Inc.'s petition for judicial review should have been dismissed because it failed to pay its tax under protest as required by W.S. § 27–3–514?

Appellee, Wyoming Restaurant Associates, Inc., did not file a brief nor did they appear at oral argument.

## II. FACTS

In 1985, the Pub Corporation (Pub) owned and operated the Steak Pub Restaurant, Pub Tavern, and Pub Wine and Liquor (Steak Pub), all located about three miles south of Jackson, Wyoming. Pub was registered with the Secretary of State as a Wyoming corporation and was registered as an employer with the Unemployment Security Commission. At that time, Pub was duly paying its unemployment taxes.

Between January of 1987 and July of 1987, the United States Small Business Administration (SBA) foreclosed on a note and mortgage it held on the Steak Pub property. The SBA purchased the Steak Pub Property at the foreclosure sale. During the redemption period and during the brief period in which the SBA owned it, Pub continued operating the Steak Pub but failed to pay its unemployment taxes for part of 1987 and the first quarter of 1988, thus creating a delinquency.

In December of 1987, the SBA sold the Steak Pub to appellee, Wyoming Restaurant Associates, Inc. (WRA), a registered Wyoming corporation, whose principal officers were Anthony Nicoli and Hans Caviezal. Then, in January of 1988, WRA conveyed the Steak Pub property and assets to Nicoli Enterprises Limited Partnership, who in turn leased the Steak Pub premises

back to WRA for a ten-year period. During the first quarter of 1988, after it had purchased the Steak Pub, WRA hired another entity, Western USA Investments (Western), to manage the operations at the Steak Pub. Western was registered with the Unemployment Insurance Commission as an employer and contributed unemployment taxes for all the Steak Pub employees for the first quarter of 1988; however, the division did not know that Western was paying the Steak Pub's unemployment taxes.

In April of 1988, Brec Cooke (Cooke) bought WRA and, as WRA, began operating and managing the Steak Pub. As of this date, Pub no longer existed but owed $7,669.77 in unemployment taxes, while Western, unbeknownst to the division, was still registered and paying unemployment taxes for the Steak Pub employees.

In September of 1988, WRA, now owned by Cooke, submitted an unemployment tax quarterly contribution report for the second quarter of 1988, which had the name *Pub Corporation* crossed out and replaced with *WRA*, as well as the contribution rate of *9.75 percent* crossed out and replaced with *2.81 percent*. WRA also forwarded payment of its taxes based on the 2.81 percent rate. In October 1988, WRA sent a report for the third quarter of 1988 with the exact same deletions and replacements, and another check based on the lower rate.

During the summer of 1988, the division investigated the relationship of Pub, WRA and Western. As a result, the division determined that WRA was a successor corporation of Pub, as defined under W.S. 27–3–507 (1991), and assigned WRA the unemployment tax delinquency rate of 9.75 percent, as provided in W.S. 27–3–503 (1991). On October 21, 1988, the division notified WRA, in writing, that its contribution rate was 9.75 percent rather than 2.81 percent and, because of the difference in rates, that it was delinquent for 1988 in the amount of $4,586.03. This notice was mailed to P.O. Box 20313 in Jackson, the address which WRA had given the division when it registered as an employer in November of 1987. WRA, at the time the notice was sent, was receiving mail at P.O. Box 2547 in Jackson. Therefore, because WRA failed to inform the division of its change in address, WRA did not receive the notice and did not appeal its 1988 contribution rate.

In December of 1988, WRA officially notified the division that it had changed its address. In that same month, the division sent notice to WRA, at the old address, that its 1989 unemployment contribution rate would be the 9.75 percent delinquent rate. In February of 1989, after WRA had been notified by the post office of a bundle of mail at the old address, WRA's attorney wrote the division objecting to the 9.75 percent delinquency rate assessed WRA. In response, on March 30, 1989, the division wrote WRA informing them that they could not protest the 1988 or 1989 rates because the statutory time for appeal had run.

In the Spring of 1989, the division discovered that it had miscalculated rates for 1989 for a number of employers; and therefore, it sent out new notices to all employers. Thus, in a separate correspondence, sent on March 27, 1989, the division re-notified WRA that its rate was 9.75 percent for 1989. This notice was sent to WRA's new address but was not appealed.

Cooke, the owner of WRA, also owned the Stagecoach Bar and Grill, located in Wilson, Wyoming, which was held and operated under two separate corporations, First Stage, Inc. and Stagecoach Enterprises, Inc. During the first quarter of 1989, WRA and the division staff attempted to solve the contribution rate issue and the delinquencies WRA had accrued. In this process, WRA informed the division that it would be reporting all four of Cooke's entities—WRA, Western, First Stage, and Stagecoach Enterprises—under one federal IRS tax identification number. Based on this information, the division staff informed WRA that it could combine the accounts of all of Cooke's entities—and pay one tax rate—because the Wyoming unemployment tax system requires businesses to use the same number of identification numbers as used for the federal filing. In addition, the division staff told WRA that

accounts can be combined where there is a managing agreement between the non-reporting entities and the one reporting entity. Thus, as of January 1, 1989, WRA and First Stage contracted Stagecoach Enterprises to employ and pay all of WRA's, First Stage's, and Stagecoach Enterprise's employees, and all three entities began filing unemployment tax under one identification number, that of Stagecoach Enterprises. WRA benefitted from this because it could then pay taxes at Stagecoach Enterprise's lower rate.

Also, as part of these discussions between the division and WRA, an accord was reached in May of 1989, where it was agreed that WRA would make installment payments to the division for the delinquencies accrued in 1988 due to WRA's failure to pay according to the 9.75 percent rate.

In the summer of 1989, the division staff met with WRA's attorney and determined that the combining was improper and thus gave the entities three separate unemployment tax identification numbers. After separating, it was determined that WRA, because it had filed under Stagecoach Enterprise's substantially lower tax rate instead of the 9.75 percent delinquency rate, was delinquent in the amount of $5,064.20 for the first two quarters of 1989. In order to pay off this delinquency, WRA agreed orally to continue the installments, which it was already paying for the 1988 delinquency, until the 1989 delinquency was also satisfied. WRA made installment payments until October of 1990.

In December 1989, the division notified WRA that its 1990 unemployment contribution rate would be the 9.75 percent delinquency rate. WRA did not appeal. In December of 1990, the division notified WRA that its 1991 unemployment contribution rate would again be the delinquency rate, which was now 9.26 percent. WRA's attorney protested the 1991 rate and then submitted an application for adjustment of back taxes under W.S. 27-3-515 (1991). WRA's last contribution to unemployment insurance was July 31, 1990.

In June 1991, before a hearing examiner, WRA challenged its 1991 contribution rate and argued for adjustment of its rates, interest and penalties for 1988-90. The hearing examiner, on July 31, 1991, rejected WRA's challenge and issued an injunction enjoining WRA from conducting business. On August 12, 1991, WRA appealed the hearing examiner's decision to the Unemployment Insurance Commission (Commission), which held a hearing on August 29, 1991, and issued a decision on October 4, 1991.

In its decision, the Commission held: (1) estoppel did not apply under these facts to prevent the division from assessing WRA the delinquent contribution rate; (2) WRA failed to timely appeal the notices of the 1988-90 contribution rates; (3) WRA did timely appeal the 1991 contribution rate notice, but the rate imposed was reasonable under the statutes; (4) W.S. 27-3-515 did not provide WRA relief in the form of adjustment of past rates; and (5) the hearing examiner's injunction enjoining WRA from conducting business was affirmed. On October 28, 1991, WRA appealed the Commission's decision to the district court.

On May 22, 1992, the district court issued an order which: (1) affirmed the 1988 contribution rate and assessment; (2) held that the 1989 and 1990 contribution rate notices were not timely appealed by WRA; (3) reversed the Commission's conclusion and instead held that estoppel did apply against the division; and (4) directed the division to recompute WRA's tax liability for 1988, 1989, 1990, 1991 and 1992. It is from this order of the district court which the division now appeals.

### III. DISCUSSION

#### A. STANDARD OF REVIEW

When reviewing agency decisions, we affirm an agency's findings of fact if they are supported by substantial evidence from the record. *Aanenson v. State ex. rel. Worker's Compensation Div.*, 842 P.2d 1077, 1079 (Wyo.1992). Substantial evidence is defined as "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." *Id.* We defer to the agency's expertise in

weighing the evidence and will not substitute our judgment for that of the agency; however, this deference as to the findings of fact goes to the finder of fact, the Commission here. *Employment Sec. Comm'n v. Western Gas Processors, Ltd.*, 786 P.2d 866, 870–71 (Wyo.1990). We affirm agency conclusions of law if they are in accordance with law. *Id.*, at 871.

## B. JUDICIAL REVIEW

We address the division's last argument first because if it is correct, then we are without jurisdiction to review the Commission's decision and need not reach the merits of the other arguments. The division argues that WRA is precluded from obtaining judicial review because they have not yet paid their delinquent taxes under protest, which, they argue, is required by W.S. 27–3–514 (1991).

Wyoming Statute 27–3–514 provides:

An employer paying contributions under protest may within six (6) months after payment initiate action for recovery against the department in a court of competent jurisdiction. The protest shall be verified and filed at the time payment is made and shall state the grounds for objection. Failure to initiate action within six (6) months is a waiver of recovery under this subsection. Review by the court is limited to the objections stated in the protest. If judgment is for the employer, the amount shall be credited to his account for contributions and interest due under this act. Any remaining balance shall be refunded to the employer from the clearing account.

The division claims that the language, *"an employer paying contributions under protest may * * * initiate action for recovery against the department,"* required WRA to pay its delinquent taxes under protest before it could obtain judicial review of the Commission's decision. The division argues that their interpretation is consistent with W.S. 16–3–114 (1990) of the Wyoming Administrative Procedure Act (WAPA), which provides:

(a) Subject to the requirement that the administrative remedies be exhausted and in the absence of any statutory or common law provision precluding or limiting judicial review, any person *aggrieved or adversely affected in fact* by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by rule adopted by an agency, is entitled to judicial review * * *.

The division asserts that WRA is not *"aggrieved or adversely affected in fact"* until it pays its delinquent taxes under protest and thus their construction of W.S. 27–3–514 is consistent with the WAPA.

The language used in W.S. 27–3–514 does not require that an employer, appealing its tax rate determination, pay its delinquent taxes under protest before it can obtain judicial review. Instead, it simply provides a cause of action to an employer, who is paying taxes under protest, to seek recovery of those taxes. The appeal process for an employer who objects to their assigned contribution rate is governed by W.S. 27–3–506 (1991), which provides:

(a) The department shall notify an employer of his contribution rate determined pursuant to this article and of total benefit charges to his account within a reasonable time after the close of each experience period. A base period employer shall be notified of the filing of all initial claims which may be charged to his account. Except as otherwise provided by the legislature and on or before January 1 of each year, the department shall notify each employer of his projected contributions payable under W.S. 27–3–503 and 27–3–505 for the ensuing calendar year. Notice under this section shall be by mail to the last known address of record.

(b) A determination of contribution rates by the department for any calendar year is binding upon the employer unless within thirty (30) days after notice is mailed, he files an application for review and redetermination in accordance with this section.

* * * * * *

(d) An employer may apply to the department for review of a decision or determination involving contribution liability, contribution rates or the charging of benefit payments under W.S. 27–3–509. The application shall be in writing and shall state the reasons for review. The department, on behalf of the commission, shall notify the employer of its acceptance or denial of the application for review or of a redetermination by the commission. If the commission grants review, the employer shall be given opportunity for a hearing in accordance with W.S. 27–3–401 through W.S. 27–3–409. * * * A denial or redetermination is final unless within thirty (30) days after notice is mailed a petition for judicial review is filed in accordance with W.S. 27–3–407.

Wyoming Statute 27–3–407 (1991) provides for judicial review based upon the requirements of the WAPA—*aggrieved or adversely affected*—but does not specifically require payment under protest before obtaining judicial review.

■■ When WRA initiated this action, it was appealing its 1991 contribution rate determination under W.S. 27–3–506 and was applying for an adjustment of past contribution rates under W.S. 27–3–515. It was not "initiating an action for recovery of payments under protest" as described in W.S. 27–3–514. Neither W.S. 27–3–506 (rate determinations) nor W.S. 27–3–515 (past tax adjustments) requires that an employer make all delinquent payments in order to seek judicial review. If the legislature intends to restrict the statutory right to judicial review, it must do so in a clear manner. *Holding's Little America v. Bd. of County Comm'rs*, 670 P.2d 699, 702 (Wyo.1983). If the intent of the legislature in passing W.S. 27–3–514 was to limit an employer's right to judicial review, that intent is not clear from the language. Therefore, the district court's decision not to dismiss WRA's petition for judicial review was in accordance with law.

### C. TIMELINESS OF 1988, 1989 & 1990 APPEALS

■ An employer is bound by the yearly unemployment tax rate assigned he or she under W.S. 27–3–506(a) "unless within thirty days after notice is mailed, he files an application for review and redetermination * * *." W.S. 27–3–506(b). In construing a similar time limitation for filing appeals of an employee benefit claim determination under W.S. 27–3–404, we held that timely filing is "mandatory and jurisdictional." *Employment Sec. Comm'n v. Young*, 713 P.2d 198, 201 (Wyo.1986). Timely filing under W.S. 27–3–506(b) of employer rate determinations is just as "mandatory and jurisdictional" as the statute in *Young*. Thus, failure to timely file bars review.

■■ It is undisputed that WRA failed to timely file for review of its 1988, 1989, and 1990 contribution rate determinations. In October of 1988, the division notified WRA, at its registered address, that its 1988 rate was 9.75 percent, as required under W.S. 27–3–506(a). In December of 1988 and March of 1989, the division notified WRA that its 1989 rate would also be the 9.75 percent rate, again at its registered address. In December of 1989, the division notified WRA that its 1990 rate would again be the 9.75 percent rate. WRA did not apply for review of these determinations within thirty days of the mailing of each notice.

We conclude, as the Commission concluded, that review of WRA's 1988–90 contribution rate determinations was precluded because WRA failed to timely file.

### D. ESTOPPEL

■ WRA timely filed for review of its 1991 unemployment contribution rate, which was set at the delinquency rate of 9.26 percent. In its appeal, WRA asserted that the division was estopped from applying this rate because the division had misinformed WRA about filing which, in turn, caused it to become delinquent. The Commission rejected WRA's estoppel argument because it was not a "rare and unusual circumstance" requiring estoppel. On review, the district court held for WRA, stating, "[t]hat the requirements of morals and justice demand that agencies should be ac-

countable for mistakes and that detrimental reliance on misrepresentations or mere unconscientiousness should create an estoppel * * *."

Concerning equitable estoppel, this court has stated:

Equitable estoppel is not applicable unless the person relied and had a right to rely on the representation or conduct. *The representation or conduct must induce and be the immediate or proximate cause of the act which is complained of.* One must show that the change of position has not been performed or completed before the time of reliance. [citations omitted and emphasis added]

*Roth v. First Sec. Bank,* 684 P.2d 93, 96 (Wyo.1984). WRA is asserting that the division should be estopped from assigning it the delinquency contribution rate because its reliance on the division's erroneous advice caused it to become delinquent and thus to be assigned the delinquency rate. The record reveals, however, that WRA would have been assigned the delinquency rate even if the alleged erroneous advice had not been given.

WRA would have been assigned the delinquency rate even without the alleged erroneous advice for two reasons. First, WRA was a successor employer who took over for a delinquent employer. Second, WRA had an outstanding delinquency stemming from its payment at a lower rate from the second and third quarters of 1988.

Wyoming Statute 27–3–507 provides:

An employing unit acquiring the trade, organization, business or substantially all the assets of an employer subject to this act *shall assume the employer's account, benefit experience and contribution rate.* If the acquiring employing unit is an employer subject to this act, the employer shall contribute at the rate in effect prior to acquisition on all wages payable for employment after acquisition until the end of the current calendar year. The department shall consolidate the separate accounts and benefit experiences and shall determine the contribution rate of the acquiring employer in accordance with this article for the calendar year following the year in which the employer notifies the department of the acquisition. [emphasis added]

Thus in 1988, when WRA acquired the Steak Pub, this statute required the division to assign to it Pub's contribution rate. Pub's contribution rate was 9.75 percent because it failed to pay unemployment taxes in the last quarter of 1987 and the first quarter of 1988 when it operated the business for the SBA. Thus, WRA's 1988 rate was 9.75 percent because it acquired Pub's contribution rate not because of the division's alleged erroneous advice.

WRA's 1989, 1990 and 1991 delinquency rates were also caused by the acquisition of Pub's rate. Wyoming Statute 27–3–503(b) provides, in part:

[A] contributing employer failing to pay all contributions, interest and penalties or to submit all quarterly contribution reports due on his account *or any account assumed under W.S. 27–3–507* on or before September 30 preceding the effective date of his assigned rate shall be assigned a delinquent rate * * *. [emphasis added]

WRA has, thus far, failed to pay all the contributions due on Pub's account which it assumed under W.S. 27–3–507. Therefore, the division was required to assign WRA the delinquent rate until Pub's delinquency was paid.

In 1988, WRA filed contribution reports for two quarters but paid its taxes based on a rate of 2.81 percent instead of 9.75 percent. This created a delinquency by WRA, which WRA agreed to pay through installments beginning in May of 1989. WRA paid a portion of this delinquency but has never paid it in full. Hence, WRA is an "employer failing to pay all contributions, interest and penalties" before September 30 of 1988, 1989, 1990, and 1991 under W.S. 27–3–503(b), and the division must assign it the delinquency rate.

The division imposed the delinquent rate on WRA because WRA was a successor to Pub, a delinquent employer, and because WRA was delinquent on its unemployment taxes, before any alleged erroneous advice.

Therefore, the alleged erroneous advice did not cause WRA to be charged the delinquent rate and estoppel does not apply because "[t]he representation [erroneous advice] [did not] induce * * * or proximate[ly] cause the act which is complained of." *Roth*, 684 P.2d at 96. The Commission's conclusion that estoppel does not apply was, therefore, in accordance with law.

### IV. DISPOSITION

Because we find that the Commission's decision is in accordance with law and supported by substantial evidence, we reverse and vacate the district court's order insofar as it partly reverses the Commission's decision, the effect being that we affirm the decision of the Commission in toto.