In the Matter of the Worker's Compensation CLAIM OF James P. MITCHELL:

L & H WELDING AND MACHINE COMPANY, Appellant (Employer–Defendant),

v.

STATE of Wyoming, ex rel. Wyoming WORKER'S COMPENSATION DIVISION, Appellee (Petitioner, Objector–Defendant).

No. 93–194.

Supreme Court of Wyoming.

June 15, 1994.

J. Stan Wolfe and C. John Cotton, Gillette, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Kenneth E. Spurrier, Asst. Atty. Gen., and M. Greg Carlson, Sp. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

An employer brings this action challenging the district court's determination that an employee's worker's compensation benefits were chargeable to the employer rather than to the industry class as a whole.

We affirm.

The employer, L & H Welding and Machine Company (L & H Welding), raises two issues:

A. The District Court erred in concluding that W.S. Section 27–14–603(e) requires a previous claim for which benefits were previously paid.

B. The District Court erred in concluding that there was no evidence in the record that Employee/Claimant had successive compensable injuries requiring distribution of benefit charges pursuant to W.S. Section 27–14–603(e).

The State, through the Worker's Compensation Division (Division), raises an additional issue:

Whether the hearing officer has authority pursuant to W.S. § 27–14–603(e) to order the division to charge benefits to an industrial class as a whole rather than a single employe[r]?

## FACTS

This case began when James Mitchell, an L & H employee, filed a worker's compensation claim for an injury to his back. L & H Welding and the Division objected to the claim; and on February 17, 1993, a hearing was held in front of a hearing examiner (examiner). On March 22, 1993, the examiner, in findings of fact and conclusions of law, determined that Mitchell was entitled to an award for temporary total disability. This determination was not challenged by the parties and is not at issue in this case. The examiner also found that Mitchell had sustained a series of compensable injuries for which a single employer could not be identified as responsible. The examiner then ordered the benefits charged to L & H Welding's general industrial classification pursuant to W.S. 27–14–603(e) (1991).

The Division appealed that decision to the district court, which reversed the examiner's decision to charge the benefits to the industrial class as a whole. The district court decided, as a matter of law, that a claimant had to have made previous claims and been paid benefits for the particular injury in order for benefits to be socialized under W.S. 27–14–603(e). Having found no evidence in the record that Mitchell had made any previous claims or had benefits paid for a lower back injury under worker's compensation, the district court concluded that W.S. 27–14–603(e) did not apply and the benefits should be charged solely to L & H Welding. L & H has appealed that decision to this court.

Since the facts pertaining to Mitchell's injury are relevant to the determination of the issues presented, we recite those facts as found by the examiner:

3. That between 1975 and 1991, [Mitchell] worked continuously in and around the oilfields as a roughneck, driller, motorman, tool pusher, or mechanic's helper. All of these employments involved heavy labor.

4. That prior to his employment with L & H Welding and Machine Company [Mitchell] had filed one previous Worker's Compensation claim * * * for an injury to his hand * * *.

5. That as early as October of 1988, [Mitchell] had consulted a chiropractor complaining of "backaches" and "lower back pain," which he described as having persisted "since high school." * * *

6. That [Mitchell] while in high school, suffered a motorcycle accident in which he suffered a broken left femur which resulted in shortening of his left leg.

7. That while employed by L & H * * * [Mitchell] was involved in a truck accident on January 24, 1992 in Johnson County,

Wyoming, wherein [Mitchell] was injured around his waist and shoulder areas and on the backs of his legs in the form of bruising which resulted in soreness and stiffness, but which [he] did not feel at the time justified medical treatment or Report of an Injury.

8. That on March 12, 1992 [Mitchell] slipped and fell while exiting a car causing pain to the lower back area for which [he] sought treatment from [a chiropractor] * * *.

9. That at the time of the slip and fall on March 12, 1992, [the chiropractor] took x-rays of [Mitchell's] spine which showed some degenerative changes but did not reveal evidence of a herniated disc.

10. That on May 19, 1992, [Mitchell] suffered an ankle injury at his place of employment while loading large rollers on the back of a pickup truck at which time, to avoid a roller that was falling over, [Mitchell] jumped out of the bed of the pickup and caught his right foot between the slats of a pallet on the floor beside the pickup causing injury to his ankle.

11. That [Mitchell] at the time that he twisted his ankle after stepping through the pallet fell backwards and was struck in the lower back by a piece of equipment on the floor of the shop.

* * * * * *

13. That as a result of the ankle injury, [Mitchell] filed a Worker's Compensation claim and Employee's Report of Injury * * *.

14. That as a result of his ankle injury, [Mitchell] consulted with Dr. Garry G. Becker, a Family Practice Physician in Gillette * * *.

15. That on June 26, 1992, [Mitchell] returned to work and after a matter of two or three days began to experience additional problems consisting of hip and leg pain.

16. That upon his return to work [Mitchell] resumed manual labor, including shoveling the yard area of the Employer.

17. That [Mitchell] encountered severe discomfort, was unable to walk upright, was severely hindered in his activities at work and began to suffer loss of sensation or numbness in the left leg and foot.

* * * * * *

20. That on July 16, 1992 [Mitchell] consulted with Dr. Garry Becker concerning the severe pain in his left posterior hip and thighs and Dr. Becker diagnosed a possible herniated disc.

21. That [Mitchell] was referred to an orthopaedic surgeon, Dr. Jerome Behrens * * * [who] examined [Mitchell] and concluded a probable herniated nucleus polposus or herniated disc.

22. That neither Dr. Becker nor Dr. Behrens could testify as to what was the probable cause of the herniated disc.

23. That Dr. Becker and Dr. Behrens and [a chiropractor] testified there was evidence of degenerative changes to [Mitchell's] spine but none concluded or opined that such degenerative changes could be the cause of a herniated disc and there was no other medical or other competent testimony to show the degenerative changes caused the symptoms experienced by [Mitchell].

24. That there was no expert medical testimony submitted that would indicate the probable cause of [Mitchell's] herniated disc was the injury suffered to his left leg in high school or the slip and fall occurring on March 12, 1992.

* * * * * *

27. That [Mitchell] was examined by Dr. Scott Nickerson on August 28, 1992 at which time he diagnosed a probable herniated lumbar disc * * *.

28. That on September 2, 1992 a CT scan of the lumbosacral spine was conducted * * * which revealed a disc herniation with a probable free fragment.

29. That on September 17, 1992, Dr. Scott Nickerson performed surgery on [Mitchell] consisting of a hemilaminotomy and discectomy at which time a large extruded fragment was found and removed.

30. That following the surgery [Mitchell] had immediate and marked recovery and return of feeling to the left hip and leg.

31. That Dr. Scott Nickerson testified that the probable cause of [Mitchell's] herniated disc was the truck accident which occurred on January 24, 1992 and significant aggravation of the same when [Mitchell] jumped from the truck at work and injured his ankle on May 19, 1992.

32. That Dr. Scott Nickerson further testified that [Mitchell's] work activities included heavy lifting and manual labor such as shoveling which also could have aggravated his back injury.

## STANDARD OF REVIEW

■ We review agency determinations of fact as follows:

> We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence.

*Hohnholt v. Basin Elec. Power Co-op*, 784 P.2d 233, 234 (Wyo.1989) (quoting *Trout v. Wyoming Oil & Gas Conservation Comm'n*, 721 P.2d 1047, 1050 (Wyo.1986)); see also *State ex rel. Worker's Compensation Div. v. White*, 837 P.2d 1095, 1098 (Wyo.1992). Factual findings made by a hearing officer regarding the historical actions of the parties are accorded due deference. *Aanenson v. State ex rel. Worker's Compensation Div.*, 842 P.2d 1077, 1080 (Wyo.1992).

■ Agency conclusions of law are affirmed only if they are in accordance with law. *Aanenson*, at 1079. The application of a statute to the historical facts is a question of law. *Id.*, at 1080. We give no special deference to the district court's decision. *Barcon, Inc. v. State Bd. of Equalization*, 845 P.2d 373, 376 (Wyo.1992).

## DISCUSSION

■ We begin with the statute in question, W.S. 27–14–603(e) (1991), which provides:

> Notwithstanding W.S. 27–14–201, in those proceedings in which the entitlement of a worker to benefits for successive compensable injuries is established but no single employer can be determined to be chargeable for the injuries, the division shall distribute the benefit charge to employers within the general industrial classification in which the employee was engaged at the time his most recent claim arose.

The statute unambiguously requires two things before benefits can be charged to an industrial classification. First, the employee must have suffered successive compensable injuries. Second, no single employer can be identified as chargeable for the injuries.

The district court concluded that § 603(e) "plainly requires a previous compensable injury for which a claim was made and benefits were paid." L & H Welding argues that the district court erred in equating "successive compensable injuries" with "previous claims" and "previous benefits paid." L & H Welding contends that there are situations where an employee might not discover an injury, which occurred while working for one employer, until after another similar injury occurs, while he was working for a second employer. L & H points out that both injuries might be compensable injuries and therefore covered under § 603(e).

■ We agree with the employer. We think the district court has read the statute too narrowly. While the fact that an employee has filed previous claims and been paid benefits is evidence of successive compensable injuries, there may be other ways to prove an employee has suffered those injuries. The statute does not delineate any methods of proof; and we will not read any into it, for there may be situations in which a party can prove successive compensable injuries by different means. The question of whether an employee has suffered successive compensable injuries should be determined on the facts of each case.

■ L & H Welding argues that there was substantial evidence from which Mitchell could be found to have suffered successive compensable injuries. L & H Welding points

to the following evidence as support: That Mitchell had engaged in 16 years of heavy lifting; that he suffered from 80% decrease in size of his disc from degeneration; that he injured his back carrying sand in 1991; that he hurt back while working for a gold mine in 1991; the 1992 truck accident; the May 1992 injury when he jumped from the pickup; and the problems with his back he encountered doing shovel work in June of 1992. These incidents alone were not sufficient to prove successive *compensable* injuries. The evidence here establishes that Mitchell suffered a single compensable injury for which L & H Welding is chargeable.

The medical evidence in the record overwhelmingly supports a finding that Mitchell's injury was the result of the January 1992 truck accident which occurred during the course of his employment with L & H Welding. Dr. Nickerson, who performed the surgery on Mitchell's back, testified as follows:

A: I believe that Mr. Mitchell sustained a work-related lumbar disc herniation in the January 24, 1992 accident.

I believe that he had significant aggravation of that injury in July with the work-related fall from the bed of a pickup truck.

\* \* \* \* \* \*

Q: All right. And it might also be described as mild degenerative disc space narrowing?

A: Yes.

Q: But would such a finding explain the types of problems that Mr. Mitchell was having?

A: No.

\* \* \* \* \* \*

Q: All right. But the degenerative changes that would have been noted would not be sufficient to require the treatment and, specifically, the surgery?

A: In no way.

Not one of the other doctors who testified could form an opinion as to the cause of the herniated disc. Dr. Becker testified as follows:

Q: Okay. So your analysis at this point was severe low back pain, and you suspected a herniated disc?

A: That's correct.

\* \* \* \* \* \*

Q: Do you have any specialties or practice area emphases?

A: Family practice.

Q: And so when you have a problem like this pertaining to back injuries or spinal problems or herniated discs, for instance, you refer those to a specialist?

A: That's correct.

\* \* \* \* \* \*

Q: Doctor, based upon the history and the examination of Mr. Mitchell in relation to the problems he was having in the left posterior thigh and hip and his low[er] back, are you able to form an opinion as to how those problems were created or arose?

A: No, I'm not.

Q: And why is that?

A: Because I don't have the information to make that decision or that diagnosis.

The third doctor who testified, Dr. Behrens, concluded:

The only thing that I can render an opinion on is whether the back injury was caused by the ankle sprain and the fact that he was walking on a crutch, and my answer to that is, no. I don't think that is likely.

Mitchell's compensable injury was the herniated disc. The only evidence in the record relating to the cause of the injury is Dr. Nickerson's opinion that it was the result of the January 1992 truck accident. None of the other doctors testified to other compensable injuries or to the cause of Mitchell's present injury. The examiner recognized this in numbers 23 and 31 of his findings of fact.

Furthermore, there is no evidence in the record that Mitchell's heavy labor work history or his disc degeneration was the cause of the injury. In fact, Dr. Nickerson specifically testified that "[i]n no way" would the disc degeneration require the treatment or surgery that Mitchell underwent. The other doctors could not even form an opinion on the subject. The examiner's decision to socialize the benefits under 27–14–603(e) was

not supported by substantial evidence, and L & H Welding should have been charged with the benefits.

Finally, the State has raised the question of whether an examiner has the authority to authorize socialization pursuant to 27–14–603(e). Since we conclude that the benefits should have been charged to L & H Welding, we need not reach this issue.

### CONCLUSION

Substantial evidence supports a conclusion that Mitchell suffered a single compensable injury for which L & H Welding was chargeable. The examiner's decision to socialize the benefits pursuant to W.S. 27–14–603(e) was not supported by substantial evidence. Therefore, the decision of the district court is affirmed.