In the Matter of the Worker's Compensation Claim of Barbara A. THOMPSON:

E.H. OFTEDAL & SONS, INC., Appellant (Petitioner/Employer–Respondent),

v.

Barbara A. THOMPSON, Appellee (Respondent/Employee–Claimant).

No. 97–231

Supreme Court of Wyoming.

Nov. 6, 1998.

Robert A. Nicholas of Nicholas Law Office, LLC, Riverton, Wyoming, for Appellant.

Donald J. Rissler of Central Wyoming Law Associates, P.C., Riverton, Wyoming, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

Appellee received worker's compensation benefits for injuries she allegedly received when she was jarred while operating heavy equipment. Two years later, the employer moved to reopen the case due to mistake pursuant to Wyo. Stat. § 27–14–605(a) (1997). On appeal, the employer challenges the hearing examiner's determination that, although there was a mistake, it required only a partial rescission of the benefits paid to appellee. Finding sufficient support in the record for the hearing examiner's conclusions, we affirm.

## I. ISSUES

Appellant, E.H. Oftedal & Sons, Inc. (employer), presents the following issues for review:

1. Was substantial evidence presented at hearing for the hearing officer to reasonably conclude that Appellee's pre-existing degenerative disc disease in her low back was significantly aggravated by the alleged work incident of October 1, 1992, and, if so, were the five subsequent low back surgeries necessitated by the work related incident? Did the Appellee pres-

ent substantial medical testimony to causally connect the work related injury to the five subsequent low back surgeries?

2. Based upon the medical testimony presented at hearing and the findings of fact concerning Appellee's physical activities after October 1, 1992, could the hearing officer reasonably conclude that the incident on October 1, 1992 was causally related to the subsequent back surgeries?

3. Are the hearing officer's ultimate findings of fact arbitrary or contrary to the facts presented at hearing and contrary to the factual findings in the decision letter?

Appellee, Barbara A. Thompson (Thompson), responds with one issue:

Are the overall findings of fact in the hearing examiner's decision on March 5, 1996 supported by substantial evidence and do the legal conclusions, contained in the hearing examiner's conclusions of law contain any errors of law warranting a reversal?

## II. FACTS

After working as a flagger for S & L Industries on a road construction project for several months, Thompson accepted the employer's offer of a job as a heavy equipment trainee. Thompson's new employment involved the operation of a "sheepsfoot roller" on the Chief Joseph Highway project in Park County, Wyoming. On October 1, 1992, Thompson was backing up when the machine caught on a large rock and dropped to the ground, throwing Thompson out and back into her seat, jarring her back and her neck. She immediately felt pain in her shoulder and believed she had injured her ribs. Shortly thereafter, Thompson told the lead man on her crew that she had been injured, but completed the last two hours of her work day.

At the end of the day, Thompson's supervisor advised her to go to the emergency room to be examined. The emergency room physician, Dr. John R. Tarr, diagnosed a shoulder strain for which he prescribed pain medication and a sling. Thompson was sent home

* Chief Justice at time of oral argument and retired 11/2/98.

to rest and was told to return several days later to be re-examined. When she returned, she was seen by Dr. Christopher Smith, who referred Thompson to Dr. Stephen F. Emery, an orthopedic surgeon.

Dr. Emery performed his initial examination of Thompson on October 15, 1992. During her first visit, Dr. Emery diagnosed a muscular problem in the region from Thompson's neck to her mid-back, prescribing physical therapy and anti-inflammatory medications. At her next visit on October 30th, Dr. Emery evaluated Thompson's lower back condition, and expanded his diagnosis to include mechanical low back pain and bursitis of the hip. On November 30, 1992, Dr. Emery treated Thompson for severe headaches, which he believed to be connected to her shoulder and neck problem, and ordered an MRI of her back for diagnostic purposes. On January 20, 1993, Dr. Emery met with Thompson to discuss the results, which revealed a degenerative process at her L–4 and L–5 disk level.

Over the following two years, Dr. Emery administered numerous injections and performed five surgeries in an unsuccessful effort to alleviate Thompson's chronic pain in her left shoulder, neck, back and hip, as well as chronic headaches. Her maladies also generated treatment for depression, anorexia, and chronic pain management.

The initial incident was timely reported to the Workers' Compensation Division (the Division), and Thompson was awarded benefits on October 13, 1992. No objection was lodged until over two years later. On November 18, 1994, the Division sent a letter notifying Thompson of its objection to benefits paid for anorexia and headaches, and on December 20, 1994, Thompson received notice of the employer's objection. In March 1995, the Division and Thompson filed a stipulation which settled the case between Thompson and the State of Wyoming.

After several continuances due to discovery matters, a hearing addressing the employer's objection was conducted on December 6 and 7, 1995. In addition to two days of testimony before the hearing examiner, no less than fifteen depositions were submitted for consideration. The hearing examiner found that because Thompson inaccurately reported her medical history, the Division had mistakenly awarded Thompson benefits for all her medical expenses pertaining to an alleged heart condition and occipital headaches. The hearing examiner also found, however, that Thompson had sufficiently established that her remaining medical problems were caused by the incident on October 1, 1992. The employer appealed the hearing examiner's decision, and after the district court affirmed, this timely appeal followed.

## III. STANDARD OF REVIEW

Our well-known standard of review was recently reiterated in *B–F Drilling, Inc. v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 942 P.2d 392, 395 (Wyo.1997):

> When reviewing an agency action, we accord no special deference to the district court's decision, instead reviewing the action as if it proceeded directly to us from the agency. *Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 875 (Wyo.1994). Our review of the factual determinations of an agency is conducted under the substantial evidence standard. *Id.* at 876. Substantial evidence is relevant evidence which a reasonable mind might accept in support of an agency's conclusion so long as it is more than a mere scintilla of evidence. *Cronk v. City of Cody*, 897 P.2d 476, 478 (Wyo.1995). If evidence in the record provides a rational basis for the findings of fact made by the agency, we will affirm those findings. *Aanenson v. State ex rel. Wyoming Workers' Compensation Div.*, 842 P.2d 1077, 1079 (Wyo.1992) (*quoting State ex rel. Wyoming Workers' Compensation Div. v. White*, 837 P.2d 1095, 1098 (Wyo.1992)). Our standard of review differs, however, when reviewing a conclusion of law. We do not defer to the agency's decision, but correct the agency's conclusion if it is not in accordance with the law. *Aanenson*, 842 P.2d at 1079 (*quoting Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871 (Wyo. 1990)).

In addition, we examine only the evidence which favors the prevailing party, allowing every favorable inference, while omitting consideration of any conflicting evidence. *Matter of Corman*, 909 P.2d 966, 970–71 (Wyo. 1996) (*quoting Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 876 (Wyo.1994)).

## IV. DISCUSSION

The employer argues that the hearing examiner correctly found that Thompson's failure to provide an accurate medical history to her treating physicians constitutes a mistake, but that the evidence does not support a conclusion that any of Thompson's reported injuries were caused by the work incident. The employer first maintains that Thompson's shoulder, neck and back injuries were irreconcilable with her known physical activities after the incident. Much is made of the fact that Thompson participated in a bowling league from November 1992 through February 1993, that she went dancing, and that on one occasion she joined in a "robotic boxing" demonstration.

The hearing examiner noted these activities, but found "that [Thompson's] unwillingness to 'sit on the sidelines' is a major reason why we see the seemingly incongruous situation where a person who suffers very real pain is also physically active." This conclusion is supported by the testimony of Dr. Allen J. Bauer, who stated that Thompson "is not one to whine or complain about stuff. She would be the other extreme and go longer with pain before she would say anything to anybody. She is like an opposite of a whiner." There is further medical testimony which demonstrates that the activities could be performed in a manner consistent with Thompson's injuries and high tolerance for pain. Dr. Emery stated that bowling would not have been inconsistent with Thompson's injury, depending on the amount of exertion expended by the individual. There were several witnesses who testified that Thompson just walked up to the line and dropped or rolled the ball down the alley. Similarly, the testimony of the witnesses regarding dancing and robotic boxing differed as to the amount of physical exertion expended by Thompson.

Contrary to the employer's assertions, no medical testimony definitively refuted the possibility that Thompson could engage in these activities while suffering from her reported injuries. No medical expert was asked a hypothetical approximating the testimony regarding Thompson's actual exertions. Instead, the doctors were offered only a worst case scenario on which to comment.

The employer next argues that the hearing examiner's conclusion that Thompson's lower back pain was caused by the incident on October 1, 1992 is contrary to the medical evidence. The employer asserts that the doctors testified Thompson would have experienced severe pain within days of the accident, but she failed to report any lower back pain until October 30, 1992. The hearing examiner found that Thompson reported low back pain almost immediately after the accident. This finding is supported by the testimony of a co-worker and Thompson's former daughter-in-law. Both testified that Thompson told them her lower back hurt the same day she was injured. Dr. Emery also stated that his notes reflect Thompson reported lower back pain at her visit on October 15th, but that time constraints limited her treatment to the most immediate problem, which at the time, was neck and shoulder pain. Thus, the hearing examiner's finding that Thompson complained of lower back pain almost immediately is substantially supported by the record.

Finally, the employer contends that the alleged injury to Thompson's shoulder is either a pre-existing condition or a figment of Thompson's malady-prone imagination. The hearing examiner did acknowledge that Thompson failed to give an accurate medical history to her doctors and that her previous medical history contains many of the same complaints she reported as a result of the injury sustained in October 1992. Despite these observations, however, the hearing examiner concluded that Thompson's work activities prior to her accident demonstrated her previous injuries had healed at the time of her accident, a determination supported by the testimony of Dr. Emery. There is also medical support for the hearing examiner's conclusion that her prior injuries left her in a

 

more vulnerable condition that was materially aggravated by the work incident. As noted by the hearing examiner and supported by medical testimony, it is not possible for a person to operate heavy equipment or perform full-time manual labor while sustaining the kind of medical problems experienced by Thompson after the incident.

 It appears that the employer's true complaint is that the hearing examiner should have discounted Thompson's veracity. The hearing examiner is in the best position to judge the credibility of the witnesses. *Matter of Corman,* 909 P.2d at 971; *Latimer v. Rissler & McMurry Co.,* 902 P.2d 706, 711 (Wyo.1995); *Hepp v. State ex rel. Wyoming Workers' Compensation Div.,* 881 P.2d 1076, 1079 (Wyo.1994). When more than one inference may be drawn from the evidence, we will not reweigh the evidence and substitute our judgment for that of the hearing examiner. *Robles,* 882 P.2d at 876, 880. In this case, the hearing examiner specifically questioned some aspects of Thompson's testimony, but ultimately found her neck, shoulder and lower back problems were caused by the work-related incident and were compensable. We refuse to second-guess the hearing examiner's assessment of Thompson's veracity.

## V. CONCLUSION

The hearing examiner's determination that specific injuries were caused by Thompson's work-related accident is sufficiently supported by the record and, therefore, the order is affirmed.