In the Matter of the injury to Earl J. BARNES.

WYOMING STATE TREASURER, ex rel. Worker's Compensation Division, Appellant (Objector-Defendant below),

and

True Drilling Company, Joint Appellant (Employer below),

v.

Earl J. BARNES, Appellee (Employee below).

No. 5003.

Supreme Court of Wyoming.

Dec. 7, 1978.

John J. Rooney, Atty. Gen., Cheyenne, Daniel E. White, Asst. Atty. Gen., and R. Stanley Lowe, Casper, signed the brief and White appeared in oral argument on behalf of the appellants.

Willis C. Geer, County Atty. and Thomas Padget, Deputy County Atty., Gillette, signed the brief and Padget appeared in oral argument on behalf of the appellee.

Before GUTHRIE, C. J. and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

This appeal arose from an order of the district court awarding the appellee-employee, Barnes, temporary total disability payments under the Worker's Compensation Act.[1] The appellants, Wyoming State Treasurer, ex rel. Worker's Compensation Division (hereinafter Division) and True Drilling Company, the employer, assert in this appeal that:

(1) The employee suffered a compensable injury on March 29, 1967.

(2) The employee's application and claim for temporary total disability benefits was not timely filed under § 72, Ch. 143, S.L. Wyo.1951.[2]

(3) The employee's application and claim for temporary total disability benefits was not timely filed under § 9, Ch. 191, S.L. Wyo.1969.[3]

We will affirm.

The record discloses that the employee suffered an injury on March 29, 1967, at which time he had been employed by the employer for approximately five years.

---

1. 1975 amendments to the Act in question changed the title of the Act from Workmen's Compensation to Worker's Compensation. We shall use the latter title except where quoting language which predates the change of title. Because of amendments since 1967, and a general unavailability of superceded pocket parts to W.S.1957, it is at times in this opinion more accurate to refer to session laws in effect at pertinent times.

2. Section 72:

"Where an award of compensation has been made in favor of an injured employee an application may be made to the court by either party in time within two (2) years from the date of the award, or at any time during which monthly payments under an award are being made, for a modification of the amount of the award on the ground of increase or decrease of incapacity due solely to the injury, or upon the ground of mistake or fraud."

3. "Section 9. That Section 27–117, Wyoming Statutes 1957, Compiled 1967, is amended and re-enacted to read as follows:

"Where an award of compensation has been made in favor of or on the behalf of an injured employee for any benefits under this Act an application may be made to the court by any party any time within two (2) years from the date of the last award, or at any time during which monthly payments under an award are being made, for additional benefits of any type or nature or for a modification of the amount of the award on the ground of increase or decrease of incapacity due solely to the injury, or upon the grounds of mistake or fraud."

Employee did not have to discontinue working at the time of this injury and was absent from work only briefly for treatments of various sorts. A report, dated April 5, 1967, by his attending chiropractor, Alvin L. Bollig, D.C., indicated that employee suffered from an "acute lumbodorsal strain with possible disc herniation," not due to a preexisting condition. Dr. Bollig's treatment was "manipulation and physiotherapy," and his concluding remarks were:

"Patient responded satisfactorily, had good range of movement and only slight pain remaining when patient had a relapse for no apparent reason on April 4, [sic] At this point I X-Rayed and am suspicious of a disc herniation and referred patient to Dr. Whiston."

A timely Injured Worker's Report of Accident was filed by the employee with the district court on April 5, 1967. An order permitting the employee to obtain treatment from Drs. Whiston and Anderson of Casper was signed by the district judge on April 6, 1967. On April 11, 1967, Dr. Anderson filed a report with the district court which concluded that:

" * * * Mr. Barnes has suffered an acute back strain and I have recommended the use heat [sic], Rela, 1 tablet, q. i. d. and Indocin, 1 capsule, t. i. d. He may work as tolerated and he should be rechecked in ten days."

Payments for treatment and services were authorized and paid from the Worker's Compensation Fund. The last Supplemental Report of Physician submitted by Dr. Anderson to the district court on July 17, 1967, contains the following:

"10. REMARKS: Patient has been dismissed from treatment but if he has recurrence of his symptoms in the future, he will require a spinal fusion to be carried out between the 5th lumbar and 1st sacral vertebrae. X-ray exam. shows narrowing of the lumbo-sacral disc."

The next item contained in the record is a petition to reopen filed by the employee on June 22, 1976.[4] The petition recited the accident of March 29, 1967, that previous treatment had ceased on July 17, 1967, and that employee had additional problems with his back since being released and that he underwent surgery on February 25, 1976. Attached to the petition was a note from Dr. Anderson which stated:

"Mr. Barnes [sic] present condition is the result of his original injury on 3/29/67. At that time he had a lumbosacral derangement and x-rays at this time show a lumbosacral derangement and the patient had surgery. He will be disabled for a period of, at least, six months from the time of his surgery which was 2/25/76."

A hearing was conducted on August 19, 1976. At that hearing the only evidence presented to the court was the testimony of the employee. The only issue was the statute of limitations. Employee's testimony iterated the circumstances of the accident in 1967. He stated that he had pain and had missed work at intervals between 1967 and 1976 but did not consult with his physician during that time. He terminated employment with employer on January 14, 1976. On February 3, 1976, he went back to Dr. Anderson because his back condition had worsened and the pain had spread to his left leg. He stated that he had not reinjured his back. Dr. Anderson treated employee with medication for several weeks. Employee testified on cross-examination about his complaints of pain at the time he quit his employment with employer:

"Q. Well, did you complain to him at the time you quit?

"A. Yeah.

"Q. And what did you say?

"A. Well, that last day it was hurting so bad that I couldn't hardly get in the car. And Mr. Baker asked me if I wanted to put it on the book that I had hurt my back again and I told him no, it was just like always and it would probably be all right in a few days.

---

4. Employee was employed by employer during most of the time including the accident occurrence in 1967 and the recurrence of his back problem in 1976.

"Q. Well, you say 'put it on the books' that you hurt your back again. Had you hurt your back again?

"A. No, not—I don't know, I don't understand how to differentiate between hurting your back again and the same injury. Mr. Baker knew how my back was, had known for years, and he's known when my back hurts. He's had to come up and run the rig a time or two when I couldn't."

Employee was asked why he had not notified employer or the court before he had his operation, and he responded that the operation had been performed without much notice to him. He testified that he had called officials of employer from the hospital after the operation and they had indicated it was too late for him to apply for benefits either under his insurance or Worker's Compensation. Employee's testimony was in no way contradicted nor was any evidence presented on behalf of employer. At the close of the hearing the trial judge commented:

" * * * [I]t just appears to the Court that under the circumstances of this case that the matter was never closed because of the statement of Dr. Anderson in his report of July 25, 1967, in which he says: ' . . . has injuries resulting in permanent disability.' His remarks are that: 'The patient has been dismissed from treatment, but if he has recurrence of his symptoms in the future he will require a spinal fusion to be carried out,' etcetera.

"And his letter then dated May 27, 1976, would indicate that the surgery that he performed in February of this year was related to that original injury that he talked about back in '67.

"And so it will be the ruling of the Court that the matter never has been closed, that it was a continuing thing during that period of time, and the award will be allowed."

As a result of the hearing, an order was issued by the district court on September 1, 1976, which concluded in pertinent part:

" * * * [T]he Court finding that the claim of the petitioner concerns on-going treatment necessitated by the petitioners [sic] previous injury on March 29, 1967 and that all proper claims are allowable.

"IT IS THEREFORE ORDERED that the petition to reopen is not necessary and that all proper claims presented by the petitioner shall be allowed as part of the petitioners [sic] original claim."

On September 24, 1976, an Objection to Award was filed by the attorney general in behalf of the Division. No protest was made to hospital or medical benefits awarded but an anticipation of further awards claimed:

"(3) According to the decision of the Wyoming Supreme Court in the case of *Wyoming State Treasurer, ex rel. Workmen's Compensation Division [Dept.] v. Niezwaag*, 452 P.2d 214 (Wyo.1969), all claims for temporary total, permanent total, or permanent partial disability are barred by the provisions of W.S. 27–117 (Laws 1951, Chapter 143, Section 72), being the law in effect on March 29, 1967, the date of the injury to Claimant. Therefore, all such claims are not 'proper claims' in this case because they were not filed within two years of the date of injury or within two years of a period in which monthly payments were being received by the Claimant.

"(4) Objector-Defendant expects such claims, particularly claims for temporary total disability, to be filed with this Court in the immediate future.

"THEREFORE Objector-Defendant requests that:

"(1) Said claims to be set down for a hearing and that:

"(2) all claims for temporary total, permanent partial or permanent total disability be denied as improper claims under the law in effect at the time of the injury to the Claimant * * *."

A claim for temporary total disability was filed in the district court on October 27, 1976. On November 3, 1976, a petition was filed by employer which objected to employee's claim on grounds virtually identical to those outlined in the State Treasurer's objection set out above.

An amended application and claim for award was filed on February 8, 1977, which asked for temporary total disability benefits from February 25, 1976 to October 6, 1976. On March 7, 1977, employer objected to the amended claim. An order was issued on March 28, 1977, to the effect that employee was awarded temporary total disability benefits for the claimed period. An order of award dated March 29, 1978, afforded employee temporary total disability payment.

We have recited the facts and procedure in great detail in order to underscore the unusual factual and procedural nature of this case. We hold our disposition to be governed by the decision of this court in *Baldwin v. Scullion*, 1936, 50 Wyo. 508, 62 P.2d 531.[5] Scullion was an employee injured on July 15, 1934, but continued working despite some pain. In August, 1934, he sought medical advice, was given medicine and advised to have his teeth pulled. Treatment continued until January, 1935. Finally, x-rays were taken disclosing a fracture or separation of a small bone fragment or spicule of bone from the upper edge of the posterior rim of the acetabulum, attributable to the accident. On April 23, 1935, the employee filed his claim for compensation alleging disability from January 17 until April 17, 1935. Thereafter and until October 18, 1935, various awards of compensation were made.

■ On October 17, 1935, the employer notified the district court that it was disputing the employee's claims. After hearing and award to the employee the matter was appealed to this court, the issue raised being late filing. *Scullion* reiterated and held as we now hold that the Worker's Compensation Act should receive a liberal construction to accomplish the benevolent purposes for which it was promulgated, 62

P.2d at 538. It was announced that it would do violence to the Act to interpret it in a way that inferred an "accident" and an "injury" identical in meaning:

> " * * * It is true that an accident frequently perhaps usually, at the exact time of its happening, produces a compensable injury, but, as the cases above make clear, that is not always so." Id. 62 P.2d at 539.

We likewise hold that the term "injury", as used in the Worker's Compensation Law, means compensable injury and is not used in the sense of the occurrence of an industrial accident giving rise to or causing the compensable injury.

■ It would equally do violence to the Act were we to say that merely because an employee is aware at the time of the accident that a compensable injury *may* manifest itself in another compensable injury some time in the future, that knowledge will bar a future claim based upon the earlier accident and injury. *Scullion* went on to say:

> "Medical science and diagnosis have advanced with well-nigh miraculous strides in the last decade or two, yet they cannot at this time, and probably never will be able to, foretell accurately the reaction of every particular human body to every particular hurt it may sustain in industrial employment. Under these circumstances, *it seems to us palpably unjust to the employee to deny him compensation because he has tried to keep his place on the employer's pay roll by doing his regular work and then has found that conditions produced at the time of the accident, and which medical science could not recognize or whose final consequences it could not forecast, have gradually and ultimately produced a compensable inju-*

---

5. This court has restated its adherence to the *Scullion* decision on several occasions. *Big Horn Coal Company v. Wartensleben*, Wyo. 1972, 502 P.2d 187, 188; *Claim of Evans*, Wyo. 1966, 417 P.2d 17, 19 (fn.1); *Bemis v. Texaco, Inc.*, Wyo.1965, 400 P.2d 529, reh. den., Wyo., 401 P.2d 708. Where a contrary result appears to be the effect of our decisions, the issue was apparently not raised or could not be supported by the facts extant. *Wyoming State Treasurer, ex rel. Workmen's Compensation Department v. Niezwaag*, Wyo.1969, 452 P.2d 214 (Question not raised); *Wyoming State Treasurer, ex rel. Workmen's Compensation Department v. Schultz*, Wyo.1968, 444 P.2d 313 (No transcript of hearing). The last cited two decisions do not, in any case, support the appellants' position under the facts of this case.

*ry*. We do not think the language employed in the law by our State Legislature was reasonably intended to produce any such result." Id., 62 P.2d at 539. (Emphasis added.)

█ In the case at bar it is unquestioned that the employee was injured in an accident in March, 1967. It is likewise unquestioned that the accident produced a disabling injury which required surgical correction in February, 1976. Paralleling *Scullion,* it can be said that in February, 1976, it became reasonably clear to the employee here that he suffered from a herniated disc and was temporarily totally disabled. Prior to that time the doctors concluded that employee suffered an injury that *may* require surgical correction at some future time. Employer and the Division argue this knowledge differentiates *Scullion.* If this is a difference it is a difference without a distinction. Further, the difference is merely one that gels the facts more conclusively in favor of compensation than they were in *Scullion.* If there is any difference between *Scullion* and this case, it is the time span between accident and injury, a fact not changing the principles. Here we have more positive evidence that the accident caused the compensable injury. The employee as a reasonable man, could not be expected to submit to a delicate and risky surgical procedure until such time as he was told by his physician that it was required.

█ The employee's compensable injury occurred when he was operated upon, February 25, 1976. In 1975, the Worker's Compensation Act was revised to a considerable extent and passed by the 43rd State Legislature during its session. Ch. 149, S.L.Wyo. 1975. Section 6 of the Act provided that it "be in force and take effect on and after 12:01 a. m., July 1, 1975, and shall only apply to injuries which occur on or after that time." Provisions of the Worker's Compensation Act in force at the time of the injury govern. *Bemis v. Texaco, Inc.,* supra, 400 P.2d at 530. A "cause of action" exists in favor of an employee at the time he receives an injury arising out of an industrial accident occurring during the course of his employment. *Claim of Evans,* supra; *Claim of Heil,* 1948, 65 Wyo. 175, 197 P.2d 692.

Section 27–12–503(a), W.S.1977, enacted during the 1975 session of the legislature, provides the statute of limitations application in the case before us:

"(a) No order or award for compensation involving an injury which is the result of a single brief occurrence rather than occurring over a substantial period of time, shall be made unless in addition to the reports of the injury, an application or claim for award is filed with the clerk of court in the county in which the injury occurred, within one (1) year after the day on which the injury occurred or for injuries not readily apparent, within one (1) year after discovery of the injury by the employee. The reports of an accident do not constitute a claim for compensation."

The employee filed his claim for temporary total disability on October 27, 1976, well within the one year period after his compensable injury occurred. Section 72, Ch. 143, S.L.Wyo.1951, and § 9, Ch. 191, S.L. Wyo.1969 mentioned in the employer's issues (2) and (3) are inapplicable.

We note, in passing, that the trial court's order was premised on the ground that the district court had continuing jurisdiction because of the 1967 claim of employee. It is the duty of the trial judge as the finder of fact to determine and find by a preponderance of the evidence whether there was a compensable injury, and, if so, when it was actually suffered by an employee, regardless of whether the matter had been previously before the court in a different posture.

Affirmed.