**In the Matter of the Worker's Compensation Benefits Claimed by San Juana CORDOVA, Surviving Spouse of Felipe A. Cordova.**

**San Juana CORDOVA, Petitioner (Claimant),**

v.

**HOLLY SUGAR CORPORATION, Respondent (Employer),**

and

**State of Wyoming, ex rel., Wyoming Worker's Compensation Division, Respondent (Objector).**

No. 93–138.

Supreme Court of Wyoming.

Oct. 7, 1994.

---

On motions for summary judgment, a hearing officer ruled that Cordova could not pursue permanent disability benefits on behalf of her deceased husband because he "was not entitled to receive or receiving [a permanent disability] award" when he died, under W.S. 27-14-403.

We reverse.

Cordova presents two issues:

I. Under the Wyoming Worker's Compensation Act and subject otherwise to its pertinent requirements, may Employee's widow seek payment for an actual and compensable permanent disability suffered by Employee when formal claim for a permanent disability award was not made before the time of Employee's death due to causes other than the work related injury?

II. If so, should this court direct the District Court to vacate the Order made by the Office of Administrative Hearings granting Respondents' motions for summary judgment and dismissal of Petitioner's case therein?

Lowell H. Fitch of Fitch Law Offices, Torrington, for petitioner San Juana Cordova.

Catherine W. Hansen of Hollard & Hart, Cheyenne and Jerry M. Smith of Sigler & Smith Law Offices, Torrington, for Respondent Holly Sugar Corp.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Kenneth E. Spurrier, Asst. Atty. Gen., for respondent Worker's Compensation Div.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY and TAYLOR, JJ.

CARDINE, Justice, Retired.

Felipe Cordova suffered a compensable hand injury but died of non-work related causes before he could file for permanent disability benefits. His surviving spouse, San Juana Cordova (Cordova), then applied for permanent disability benefits from the Wyoming Worker's Compensation Division (Division) on behalf of her deceased husband.

* Retired July 6, 1994.

## FACTS

Felipe Cordova (Felipe) worked for the Holly Sugar Corporation (Holly Sugar) for nineteen years. From 1986 to February 28, 1992, Felipe, at a warehouse in Torrington, Wyoming, moved, weighed, sealed and stacked fifteen-pound, machine-filled containers of sugar packets for Holly Sugar. From September 1991, to February 1992, Felipe suffered from recurring cramps in both palms and elbows while performing his duties at Holly Sugar. Felipe was laid off on February 28, 1992, and recalled to work on March 18, 1992. Felipe returned to work but was unable to perform his duties due to the pain in his palms and elbows. After visiting several physicians, Felipe was diagnosed with bilateral carpal tunnel syndrome.

On April 9, 1992, Felipe filed an accident report with the clerk of the Goshen County District Court describing his injured hands. Holly Sugar disputed Felipe's claim. After a contested case hearing on July 9, 1992, a

hearing officer awarded Felipe medical benefits and awarded temporary total disability beginning on March 19, 1992. All of Felipe's temporary total disability claims submitted for the period between March 20, 1992, and July 31, 1992, were approved and paid by the Division.

On August 18, 1992, Felipe filed another claim for temporary total disability benefits for the month of August. On August 26, 1992, Holly Sugar petitioned the Division for review of Felipe's August claim and, ironically, Felipe died of heart failure unrelated to his hand injury. Holly Sugar dropped its appeal of Felipe's final temporary total disability claim, and the Division paid that final claim on August 31, 1992. Before his death, Felipe had not received a permanent partial or permanent total disability rating, and had not made a claim for permanent disability.

On December 2, 1992, Cordova, Felipe's wife, by a letter from her counsel, sought permanent disability benefits for Felipe's injury. Enclosed with that letter was a letter from Felipe's physician to Cordova's counsel, written after Felipe's death, which stated:

I think [Felipe]'s hands had been rendered essentially totally useless, and in my medical opinion, both hands would have remained essentially totally functionless as a result of the inflammatory process.

On January 12, 1993, the Division denied Cordova's request for permanent disability benefits; and on February 4, 1993, Cordova requested a contested case hearing. Both Holly Sugar and the Division moved for summary judgment, and Cordova answered by filing a "Claimant's Memorandum of Law." On May 14, 1993, a hearing officer awarded summary judgment to Holly Sugar and the Division and dismissed Cordova's claim. On June 9, 1993, Cordova petitioned the Goshen County District Court for judicial review and, on July 6, 1993, the district court certified Cordova's petition to this court because it presented a "novel question of state-wide importance."

## DISCUSSION

The parties do not dispute the underlying facts. The sole question we must address is whether, based on the undisputed facts, the hearing officer correctly concluded that the Division and Holly Sugar were entitled to summary judgment as a matter of law. Under the Wyoming Administrative Procedures Act, we affirm agency conclusions of law if they are in accordance with law. W.S. 16–3–114(c)(ii)(A); *Aanenson v. State ex rel. Worker's Compensation Div.*, 842 P.2d 1077, 1079 (Wyo.1992).

■■■ The question we must answer is whether a surviving spouse of an employee, who suffers a compensable injury but who dies from causes other than the compensable injury before he has made a formal claim for permanent disability benefits, may maintain a separate action for permanent disability benefits. The dispositive statute, W.S. 27–14–403 (1991), provides in part:

(a) In addition to payment of medical and hospital care and artificial replacement, an injured employee and his dependents may be entitled to one (1) or more awards for:

(i) Temporary total disability;

(ii) Permanent partial disability;

(iii) Permanent total disability; or

(iv) Death.

\* \* \* \* \* \*

(d) *If an injured employee entitled to receive or receiving an award under paragraph (a)(ii) or (iii)* of this section dies due to causes other than the work related accident, the balance of the award shall be paid:

(i) To the surviving spouse[.]

(emphasis added). Under the statute, when an injured employee dies from causes other than the work related injury, the Division must pay the balance of a permanent disability award to a surviving spouse in two different situations. First, if the injured employee is an *employee receiving an award of permanent disability* and, second, if the injured employee is an *employee entitled to receive a permanent disability award.* We are concerned with the second situation. The hearing officer determined that Felipe was not "an injured employee *entitled to receive*" a permanent disability award because "no award for either permanent partial disability

or permanent total disability had been entered as of [Felipe's] date of death."

Holly Sugar and the Division argue that the hearing officer's construction of the phrase *"entitled to receive"* is correct. They assert that the hearing officer's construction is supported by W.S. 27–14–404 and –405, both of which require "certification by a physician licensed to practice surgery or medicine that an injury results in permanent total [or permanent partial] disability" before a permanent disability award may be granted. W.S. 27–14–406 (1991), see also W.S. 27–14–405(a) (1991). In other words, they assert that one cannot be *"entitled to receive"* a permanent disability award until he or she has filed for such a claim and obtained certification as permanently disabled under W.S. 27–14–405 or –406.

Conversely, Cordova asserts that she should be allowed to prove that Felipe is *entitled to receive* a permanent disability award and that simply because he did not make a claim or receive the required certification does not mean he is not *entitled to receive* a permanent disability award. Cordova argues that the plain and unambiguous language of the statute does not require the filing of a claim or obtaining physician certification as a pre-condition to her ability to maintain this action.

We agree with Cordova. Nowhere in W.S. 27–14–403(d) is there a requirement that a claim for permanent partial or permanent total disability benefits be made before the covered worker's death. If we adopted the construction urged by Holly Sugar and the Division, we would have to read into the statute an additional and restrictive term setting a condition precedent, *i.e.*, "entitled to receive *[at the time of death by virtue of filing a claim and obtaining physician certification]*." Therefore, adoption of Holly Sugar's and the Division's construction would contravene the rule that, whenever possible, we must liberally construe the Worker's Compensation Act in favor of the worker. *Wyo–Ben, Inc. v. State ex. rel. Worker's Compensation Div.*, 783 P.2d 161, 165 (Wyo. 1989).

When faced with the question of "whether a dependent of a deceased employe[e] may receive benefits to which that employe[e] may have been entitled when no claim was filed during the employe[e]'s lifetime[,]" a Pennsylvania Court stated:

We must begin this discussion with the proposition that nothing in the Act specifically prohibits recovery in this situation. Nowhere in the Act is there the requirement that a claim for benefits due and owing a deceased employe[e] be filed before that employe[e]'s death. On the contrary, Section 410 can be fairly read to authorize a dependent's filing of such a claim. Were we to refuse recovery here, we would hardly be giving the Act the broad, liberal construction which has traditionally been accorded it.

*Frederico Granero Co. v. Workmen's Compensation Appeal Bd.*, 48 Pa.Cmwlth. 252, 599, 409 A.2d 1187, 1187–88 (1980).

In addition, the construction urged by Holly Sugar and the Division would produce an absurd, illogical and unreasonable statute, which we must avoid when construing statutes. *Stauffer Chemical Co. v. Curry*, 778 P.2d 1083, 1093 (Wyo.1989). If we read the statute as urged by Holly Sugar and the Division, then, no matter how obvious a permanently disabling injury, *e.g.*, loss of limb, the failure to file a claim and obtain physician certification before an unrelated death will preclude a dependent from maintaining a claim for permanent disability benefits. On the other hand, if a claim is filed the day before death or if death results from the work related injury, benefits are payable to survivors. That interpretation contended by appellees "would indeed elevate form over substance." *Weston County Hosp. Joint Powers Bd. v. Westates Constr. Co.*, 841 P.2d 841, 849 (Wyo.1992). We do not think the legislature intended an unjust and unreasonable result.

As further support for adopting this construction, an Indiana appellate court, when faced with precisely the same question, construed very similar statutory language in favor of the surviving spouse. *Snyder Constr. Co. v. Thompson*, 145 Ind.App. 103, 248 N.E.2d 560, 564 (1969). The employee/claimant in *Snyder* was injured, receiving temporary total disability and had not yet filed for

permanent disability benefits when he died from causes other than the compensable injuries. *Id.,* 248 N.E.2d at 563. Five months after the employee/claimant's death, his wife instituted a claim in her name for employee/claimant's permanent partial disability. *Id.* The Indiana statute at issue provided:

> When an employee has been awarded or is *entitled to an award of compensation* for a definite period under this act * * * for an injury * * * and dies from any other cause than such injury, payment of the unpaid balance of such compensation * * * shall be made to his dependents * * *.

(emphasis added). *Id.,* 248 N.E.2d at 561. That court construed the above statutory language as follows:

> [A] dependent may institute an independent claim for workmen's compensation in the event the deceased employee died from causes unrelated to a compensable injury, if the employee is otherwise entitled to receive compensation under the act. Further, a dependent's right to compensation is not dependent upon the initiation of a claim for compensation by the injured employee prior to his death.

*Id.,* 248 N.E.2d at 564.

### CONCLUSION

We hold that the hearing officer did not rule in accordance with law when he granted summary judgment to Holly Sugar and the Division. When an injured employee dies from causes unrelated to his or her compensable injury, W.S. 27–14–403(d) does not require that the injured employee have filed a claim for permanent disability benefits and have obtained physician certification before his or her death in order for a qualified dependent to maintain an action to claim those permanent benefits. Our decision in this case does not determine whether or not Cordova should have received an award; it does allow Cordova to pursue her claim and attempt to prove Felipe's entitlement to a permanent disability award. Therefore, the decision of the hearing officer is reversed and the case remanded for further proceedings consistent with this opinion.

We reverse.

THOMAS, J., files a dissenting opinion.

THOMAS, Justice, dissenting.

I do not read the statute in the same way as the majority. I do not think the statute justifies the consideration of an award for permanent disability in this instance, and I would affirm the summary judgment of the hearing officer. Consequently, I dissent.

I am satisfied the statutory scheme in this instance encompasses something beyond a mere expectancy. The majority opinion points out Felipe Cordova had not made a claim for permanent disability benefits prior to his death from an unrelated cause. It also is clear he was not receiving an award for permanent disability and, as the majority correctly says, the focus must be upon whether he was entitled to receive a permanent disability award at the time of his death.

Even conceding the rule of liberal construction, we still must discern legislative intent with respect to this statutory enactment. As we said in *State ex rel. Wyoming Workers' Compensation Div. v. Halstead,* 795 P.2d 760, 771 (Wyo.1990):

> Legislative intent is the primary and foremost consideration in statutory construction. Such intent should be ascertained as nearly as possible from the language of the statute. *State Board of Equalization v. Tenneco Oil Co.,* 694 P.2d 97 (Wyo.1985); *State ex rel. Motor Vehicle Division v. Holtz,* 674 P.2d 732 (Wyo. 1983); *In re Adoption of MM,* 652 P.2d 974 (Wyo.1982); *Wyoming State Department of Education v. Barber,* 649 P.2d 681 (Wyo.1982). All portions of an act must be read in pari materia, and every word, clause and sentence of it must be given effect and considered so that no part will be inoperative or superfluous, all with the purpose of ascertaining and giving effect to the legislative intent. *Story v. State,* 755 P.2d 228 (Wyo.1988); *Hamlin v. Transcon Lines,* 701 P.2d 1139 (Wyo.1985); *Haddenham v. City of Laramie,* 648 P.2d 551 (Wyo.1982).

I am unable to take the language relied upon in the majority opinion out of the context of the rest of the Wyoming Worker's Compensation Act. For example, WYO.STAT. § 27–14–501(f) (1991) provides that "[a] claim for permanent disability benefits under W.S. 27–14–405 and 27–14–406 and a claim for death benefits under W.S. 27–14–403 shall be filed with the division and the division shall transmit a copy to the clerk of court." The filing of a claim is a prior condition to any award of benefits. The Division is responsible for review of a filed claim and is charged with either approving or denying it. If it is approved, the Division shall determine the amount of the award for compensation. A physical impairment rating must be received prior to determination of the amount of the award for permanent partial disability. WYO. STAT. § 27–14–601(d) (1991). The same thing is true for permanent total disability. WYO. STAT. § 27–14–406 (1991). Given the use of the word "award" in WYO.STAT. § 27–14–403(d) (1991), I am unable to justify entitlement to an award unless the requisite statutory demands have been satisfied. Unfortunately, in this case, they were not.

I would affirm the order of the hearing examiner in this instance, even recognizing that the worker's widow is entitled to concern and sympathy. I simply cannot justify the construction of the statute adopted by the majority.