996 P.2d 679 (2000)
In the Matter of the Worker's Compensation Claim of Gerald S. PINO, An Employee Of Cowboy Dodge:
Gerald S. Pino, Appellant (Petitioner),
v.
State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).
No. 98-79.
Supreme Court of Wyoming.
February 17, 2000.
*680 Representing Appellant: Terry J. Harris of Terry J. Harris, P.C., Cheyenne, Wyoming.
Representing Appellee: William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, Cheyenne, Wyoming.
Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,[*] JJ.
THOMAS, Justice.
The resolution of this case, in which judicial review is sought of an Order Denying Benefits for a worker's compensation claim, depends upon the recognition of a duty on the part of a hearing examiner to invoke the rules of law pertaining to the claimant's theory of the case. The issue claimed by Gerald S. Pino (Pino) is that the decision of the hearing examiner, denying benefits for a herniated disc in his back, was contrary to the substantial weight of the evidence, and such a decision is arbitrary, capricious, or other than in accordance with law. Pino was injured on the job. A bulge in a disc in Pino's back was disclosed by a Magnetic Imaging Resonance (MRI) test subsequent to that injury. Some twenty-one months later, the disc herniated when Pino coughed while stepping out of the shower at home. Two treating physicians testified that the ruptured disc was, as a matter of reasonable medical probability, a result of the earlier injury on the job. They did concede that, in the absence of any previous objective investigation such as x-rays or an MRI, the bulge could have been present prior to the injury. Both stated, however, that no symptoms of such a condition were present prior to the job injury, and that fact supported the opinion of each of the doctors that the condition did not antedate the injury. The hearing examiner ruled that the cause of the herniation was the cough while Pino was at home and, therefore, Pino had failed to prove a job-related injury. Our examination of the Order Denying Benefits in light of the record persuades this Court that the hearing examiner overlooked, and for that reason failed to apply, the pertinent rules of law relating to a second compensable injury. The result was a decision contrary to law, and the Order Denying Benefits must be reversed and the matter remanded to the Office of Administrative Hearings for entry of an order in accordance with this opinion.
In the Brief of Appellant, the issue is stated in this way:
Did the Wyoming Office of Administrative Hearings (OAH) act arbitrarily, capriciously, other than in accordance with Wyoming workers' compensation law, and contrary to the substantial evidence before it, when it entered its December 4, 1997 final order denying Appellant Gerald S. *681 Pino's claims for Wyoming workers' compensation benefits filed in connection with his continuing back complaints arising out of his original compensable back injury with Cowboy Dodge?
This Statement of the Issues is found in the Brief of Appellee, filed on behalf of the State of Wyoming, ex rel. Wyoming Workers' Safety and Compensation Division (Division):
The Hearing Examiner found the Employee's herniated disc was caused by his coughing while he exited the shower at home, not by his prior, work-related back injury.
A. Were the Hearing Examiner's findings supported by substantial evidence, within his discretion, and in accordance with law?
In June of 1995, Pino was employed as a mechanic in an automobile dealership in Cheyenne. He was severely injured when a van that he was working on slipped out of gear and rolled, pinning him against a workbench. His injuries were treated at the hospital, where x-rays disclosed no bone damage, and he returned to work within a couple of days. By the end of the following week, after he had continued working at his job, Pino sought treatment from his family physician, Dr. S. Pino's complaints were debilitating lower back pain and radiating bilateral leg pain. Dr. S. ordered an MRI test, which revealed mild disc degeneration and a bulge in Pino's spine at L-4 L-5, L-5 S-1. Dr. S. treated Pino conservatively with muscle relaxers, anti-inflammatories, and therapy for the following six months.
Pino returned to work part-time within the six month period, and he began working full time shortly thereafter. Intermittently, he had good days and bad days over the course of the next fourteen months. He suffered recurrent pain, and occasionally he experienced work-related flare-ups. He would take time off from work depending on the nature and length of the flare-up. Dr. S. articulated an opinion that the symptoms experienced by Pino related back to the initial injury in June of 1995.
In March of 1997, Pino coughed as he was getting out of the shower at home; he heard a pop; and immediately felt pain that was very like the pain he experienced when the van pinned him against the workbench in 1995. Another MRI was obtained, and it disclosed a ruptured disc in Pino's back at the site of the bulge. Pino had experienced no trouble with his back prior to the injury in 1995, but the examination by Dr. S. following that occasion disclosed the bulge in his back and a weakening of the fibrous tissue surrounding the disc that ruptured. Dr. S., in his testimony, advanced the opinion that to a reasonable degree of medical probability, Pino's condition was attributable to the work-related injury in June of 1995. On cross-examination, Dr. S. conceded that in the absence of any x-rays taken prior to the 1995 injury, there was no way to tell definitively whether Pino had asymptomatic bulges or not. Dr. S. was clear that a hot shower would not relax the surrounding muscles and cause the bulge. Furthermore, a cough would not result in herniation of a disc in an asymptomatic individual who did not already have some defect.
At the hearing, the Division endeavored to inject doubt with respect to the opinion of Dr. S. by questioning him about the report of the radiologist concerning the MRI that was made in 1995. The questioning suggested that a statement in the radiologist's report reflecting that Pino's symptoms were in the opposite, right leg, in the context of his identification of a bulge and spurring that was asymmetric in the left paracentral region at L-5 S-1, which might indicate mild disc protrusion beyond the osteophytes in that area, demonstrated that the 1995 injury was not related to the ruptured disc. The ultimate statement was that the finding, i.e., the disc bulge and spurring that are asymmetric on the left paracentral region at L-5 S-1, was of questionable clinical significance because of the symptoms in the right leg. When asked to explain that, Dr. S. pointed out that the radiologist was hedging because he did not know whether that bulge was related to Pino's symptoms. Dr. S. pointed out that it is possible for a small fragment to bulge to the midline or even to the right that is not seen on the MRI and that the radiologist was simply saying he did not know whether that condition was present or not. Dr. S. agreed *682 that there was no way of saying for sure because of the absence of prior objective diagnostic reports like the MRI or an x-ray, but for him it was a safe assumption that the crushing between the van and the workbench precipitated the bulge. He essentially supported that opinion by pointing out that Pino had no symptoms prior to the 1995 injury and the symptoms presented themselves following the injury.
Another expert, Dr. V., the neurosurgeon who treated Pino, testified he had reviewed the two MRI's. According to Dr. V., although the 1995 MRI did not show an overtly herniated disc, a bulge was present which could have resulted from micro trauma over a period of time or a single episode. Dr. V. testified that only ten to fifteen percent of people about Pino's age have asymptomatic disc bulges and that Pino had only "very mild" degenerative changes in his spine in July of 1995. Like Dr. S., he could not say with certainty what had caused the bulge, but his opinion was the same that the fact that Pino was asymptomatic prior to the 1995 accident and became symptomatic thereafter resulted in a conclusion in terms of reasonable medical probability that the 1995 injury had precipitated the bulge. He also pointed out that symptoms in the opposite leg of the location of the bulge were not very significant because damage had been done and the degenerative process had started.
Dr. V., during cross-examination by the Division, summarized his position in this way:
I expect that he sustained an injury with his initial accident in 1995 that started degeneration in the disc, and accounted for the disc bulge seen on the MRI scan. I expect that his disc continued to weaken as the degeneration's usually a gradual process such that it was sufficiently weakened with a rather minor occurrence of a cough, it was enough to cause a disc herniation.
While Dr. V. also conceded that a disc bulge could come from bending, twisting, or lifting and that Pino could have been asymptomatic and had a disc bulge prior to the injury, he still pointed to the reliance in his diagnosis upon the fact that Pino had been asymptomatic until after his work-related injury.
In addressing these matters in the Order Denying Benefits, the hearing examiner included in his Conclusions of Law:
6. Pino has failed to meet his burden. The evidence does establish that in 1995 Pino suffered a work-related injury which may have resulted in a disc bulge. From 1995 through May 1997, Pino worked but had periodic flare-ups of his low back pain radiating into his legs. He sought medical treatment and these treatments were paid for by the Division. In May 1997, while at home, Pino coughed, felt a pop, and experienced immediate pain in his low back. An MRI in 1997 revealed a herniated disc. It is the opinion of the doctors that the work injury in 1995 weakened Pino's disc and predisposed him to a disc herniation. There is no question that the cough in 1997 caused the disc herniation and caused Pino's current back condition.
7. The medical evidence establishes that the injury in 1995 predisposed Pino to the possibility of a disc herniation. However, doing mundane things at home such as lifting, bending, twisting or coughing can cause a herniated disc. In this case, Pino was at home when he coughed. Pino has failed to establish that his herniated disc was caused by an injury received at work.
Ultimately, the hearing examiner concluded that Pino had failed to establish that the herniated disc was causally related to the work-related injury in 1995.
Pino pursued judicial review of the Order Denying Benefits in the district court. The district court then certified the case to this Court in accordance with W.R.A.P. 12.09(b).
In Pederson v. State ex rel. Wyoming Workers' Compensation Div., 939 P.2d 740, 742 (Wyo.1997), we summarized the appropriate approach to judicial review in an instance in which an agency declares that the party charged with the burden of proof has failed to meet that burden:
A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. Martinez v. State ex rel. Wyoming Workers' Compensation Div., *683 917 P.2d 619, 621 (Wyo.1996). When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of Wyo. Stat. § 16-3-114(c)(ii) (1990). City of Casper v. Utech, 895 P.2d 449, 452 (Wyo.1995). On appeal the complainant, Pederson in this instance, has the burden of proving arbitrary administrative action. Knight v. Environmental Quality Council of State of Wyo., 805 P.2d 268 (Wyo.1991); Wyoming Bancorporation v. Bonham, 527 P.2d 432, 439 (Wyo.1974); Marathon Oil Co. v. Welch, 379 P.2d 832, 836 (Wyo.1963); Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, 526 (1957). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. Utech, 895 P.2d at 451, and cases there cited. The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. Wyoming Steel & Fab, Inc. v. Robles, 882 P.2d 873, 875 (Wyo.1994). Demonstrating evidentiary contradictions in the record does not establish the irrationality of the ruling, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it. Matter of Corman, 909 P.2d 966, 971 (Wyo.1996); Knight, 805 P.2d at 274; Ward v. Board of Trustees of Goshen County School Dist. No. 1, 865 P.2d 618, 623 (Wyo.1993); State ex rel. Wyoming Workers' Compensation Div. v. Ramsey, 839 P.2d 936, 941 (Wyo.1992).
The articulated review approach is consistent with Wyo. Stat. Ann. § 16-3-114(c)(ii)(A) and (E) (Lexis 1999), which provides that the reviewing court must:
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]
* * *
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
When an abuse of discretion is the issue on review, the reviewing court examines the question of whether the agency's "decision was based on a consideration of relevant factors and whether it is rational." Matter of Corman, 909 P.2d 966, 971 (Wyo. 1996). The failure of any essential finding to be supported by substantial evidence results in an arbitrary and capricious decision and must be reversed. Matter of Goddard, 914 P.2d 1233, 1236 (Wyo.1996) (quoting Majority of Working Interest Owners in Buck Draw Field Area v. Wyoming Oil and Gas Conservation Com'n, 721 P.2d 1070, 1079 (Wyo.1986)). Our definition of substantial evidence is "`relevant evidence which a reasonable mind might accept in support of the conclusions of the agency.'" State ex rel. Wyoming Workers' Compensation Div. v. Harris, 931 P.2d 255, 258 (Wyo.1997) (quoting Stuckey v. State, ex rel. Wyoming Worker's Compensation Div., 890 P.2d 1097, 1099 (Wyo.1995)). When there is substantial evidence present to support the agency's finding of fact, we do not substitute our judgment for the agency finding. Wyoming Steel & Fab, Inc. v. Robles, 882 P.2d 873, 876 (Wyo.1994) (quoting Sinclair Trucking v. Bailey, 848 P.2d 1349, 1351 (Wyo.1993)). The reviewing court, however, may adjust the findings of fact when they are clearly contrary to the overwhelming weight of the evidence. Weaver v. Cost Cutters, 953 P.2d 851, 855 (Wyo.1998) (citing Nelson v. Sheridan Manor, 939 P.2d 252, 255 (Wyo.1997)).
The decision of the agency will only be affirmed, however, if it is in accordance with the law, and the reviewing court may substitute its own judgment if the decision does not comport with the law. Matter of Cordova, 882 P.2d 880, 882 (Wyo.1994). We also have ruled that in an instance in which a hearing examiner's "decision shocks the conscience of the court and appears to be so *684 unfair and inequitable that a reasonable person could not abide it," such a decision can be reversed for an abuse of discretion. Matter of Goddard, 914 P.2d at 1238 (citing State ex rel. Wyoming Workers' Compensation Div. v. Rivera, 796 P.2d 447, 451 (Wyo.1990)).
As the hearing examiner correctly ruled, Pino had the burden of establishing all the statutory elements which comprise a compensable injury by a preponderance of the evidence. Matter of Worker's Compensation Claim of Thornberg, 913 P.2d 863, 866 (Wyo.1996). The statute defines an injury as "any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer * * *." Wyo. Stat. Ann. § 27-14-102(a)(xi) (Michie 1991). To satisfy that burden, Pino was required to establish by a degree of medical probability that the 1995 injury was a contributing cause to the 1997 injury in order to have his claim honored. It is undisputed that the injury Pino suffered in 1995 met the requirements of the statute. The focal issue before this Court is captured by this language, "in order for a second injury to be compensable, the original compensable injury must itself be the direct cause of the subsequent injury." State ex rel. Wyoming Workers' Safety and Compensation Div. v. Bruhn, 951 P.2d 373, 377 n. 1 (Wyo.1997).
Whenever disparate results are obtained by those similarly situated, the specter of an arbitrary or capricious decision must be confronted and resolved. Wyoming has long recognized the proposition that a job-related injury can cause damage that is not immediately apparent or necessarily subject to treatment at the time. In Casper Oil Co. v. Evenson, 888 P.2d 221, 224-25 (Wyo.1995), we said:
The basic rationale behind the second compensable injury rule is well stated in Baldwin v. Scullion, 50 Wyo. 508, 530-31, 62 P.2d 531, at 539 (1936):
[I]t seems to us palpably unjust to the employee to deny him compensation because he has tried to keep his place on the employer's pay roll by doing his regular work and then has found that conditions produced at the time of the accident, and which medical science could not recognize or whose final consequences it could not forecast, have gradually and ultimately produced a compensable injury. We do not think the language employed in the law by our State Legislature was reasonably intended to produce any such result.
This rationale remains persuasive and we apply it in our analysis today. See, Matter of Krause, 803 P.2d 81, 82 (Wyo.1990); Pacific Power & Light Co. v. Rupe, 741 P.2d 609, 610 (Wyo.1987); State ex rel. Wyoming Workers' Compensation Div. v. Malkowski, 741 P.2d 604, 605 (Wyo.1987); Matter of Barnes, 587 P.2d 214, 218-19 (Wyo.1978) and Baldwin v. Scullion, 50 Wyo. 508, 530-31, 62 P.2d 531, 539 (1936).
Matter of Barnes, 587 P.2d 214 is remarkably similar to the case before us. Barnes was injured in 1967 and filed a timely claim. Id. at 215. Barnes suffered an acute back strain and his physician noted that if his back trouble continued, a spinal fusion would be required. Id. at 216. Barnes underwent fusion surgery in February of 1976. Id. He filed a petition to reopen his case in June of 1976. Id. Attached to the petition was a note from his physician that stated, "`Mr. Barnes [sic] present condition is the result of his original injury on 3/29/67.'" Id.
Following a hearing, Barnes was awarded hospital and medical benefits as well as benefits for temporary total disability. Id. at 217. The Worker's Compensation Division objected and appealed to the district court, arguing that the claim was time barred. Id. This court affirmed the award and quoted from the district court's order:
"* * * [T]he Court finding that the claim of the petitioner concerns on-going treatment necessitated by the petitioners [sic] previous injury on March 29, 1967 and that all proper claims are allowable.
"IT IS THEREFORE ORDERED that the petition to reopen is not necessary *685 and that all proper claims presented by the petitioner shall be allowed as part of the petitioners [sic] original claim."
Id.
* * *
An industrial accident can give rise to more than one compensable injury. See, Rupe, 741 P.2d at 610; Malkowski, 741 P.2d at 605; Matter of Barnes, 587 P.2d at 218; and Scullion, 62 P.2d at 539. When this principle is applied to the present case, there is no way to distinguish Evenson's injury and his multiple surgeries from the cases cited above. Evenson's back injury, followed by fusion surgery, is identical to the situation in Matter of Barnes, and is very similar to the facts in Rupe and Malkowski. In each case, a man suffered an injury during his employment which required relatively immediate medical attention for which he was promptly compensated. Rupe, 741 P.2d at 610; Malkowski, 741 P.2d at 604; Matter of Barnes, 587 P.2d at 216; Scullion, 62 P.2d at 539. Each man then required additional surgery at a later date and was ultimately awarded benefits under the second compensable injury rule. Rupe, 741 P.2d at 610; Malkowski, 741 P.2d at 605-06; Matter of Barnes, 587 P.2d at 219; Scullion, 62 P.2d at 532.
Nothing in this instance serves to substantially distinguish Pino's circumstances from those in the cited cases. The Findings of Fact by the hearing examiner read very much like the material facts reported in the cited cases. Further, there is no indication of internal inconsistencies between the testimony of Pino and his treating physicians like those that caused this court to affirm in Matter of Krause, 803 P.2d 81 (Wyo.1990). Included among the hearing examiner's Conclusions of Law is this statement:
It is the opinion of the doctors that the work injury in 1995 weakened Pino's disc and predisposed him to a disc herniation. There is no question that the cough in 1997 caused the disc herniation and caused Pino's current back condition.
The thrust of the hearing examiner's disposition is clear; he ruled that the cause of the herniation was a cough that occurred at home not the work place. Yet, there is nothing in the second compensable injury rule that attributes any significance to the place where the worker happened to be when the injury manifested itself nor is any triggering event required. Other cases simply report the increasing severity of the injury over time that ultimately required surgery. In Evenson, the triggering event was a slip and fall at home.
We have ruled in a different medical context that the causal connection between an accident or condition at the workplace is satisfied if the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury. Claim of Taffner, 821 P.2d 103, 105 (Wyo.1991). We do not invoke a standard of reasonable medical certainty with respect to such causal connection. Kaan v. State ex rel. Wyoming Worker's Compensation Div., 689 P.2d 1387, 1389 (Wyo.1984) (citing Jim's Water Service v. Eayrs, 590 P.2d 1346 (Wyo.1979)). Testimony by the medical expert to the effect that the injury "most likely," "contributed to," or "probably" is the product of the workplace suffices under our established standard. Kaan, 689 P.2d at 1389. We have quoted above the mixed findings of fact and conclusions of law pursuant to which the hearing examiner acknowledged that it was the opinion of the doctors that the work injury in 1995 weakened the disc in Pino's back and predisposed him to herniation. Further, the hearing examiner acknowledged that the evidence established that the injury in 1995 predisposed Pino to the possibility of disc herniation. The hearing examiner then ruled, however, that the cause of the herniated disc was the cough at home. The hearing examiner made no reference to the law surrounding a second compensable injury.
This record discloses that under either the "reasonable medical probability" or "more probable than not" standard, Pino succeeded in demonstrating the causal connection by a preponderance of the evidence.[1] *686 Dr. V., the neurosurgeon who treated Pino, stated the causal connection in this way at the hearing:
Q. Doctor [V], do you have an opinion, to a reasonable degree of medical probability, not certainty, but probability, as to whether [Pino's] present back condition arises out of his original June, 1995 injury with [his place of employment].
[The Division]: We object, and our position is in Workers' Compensation cases the standard is reasonable degree of medical certainty.
THE HEARING EXAMINER: Objection noted. Doctor, can you answer the question?
A. With standard medical certainty I expect that he started a spectrum of disease in his accident in 1995 that led to the disc herniation when he coughed in 1997.
Q. [By Pino's Attorney] And, Doctor, do you have an opinion, to a reasonable degree of medical probability, as to whether [Pino's] present condition is a continuation of that original June, 1995 injury?
[The Division]: Same objection.
THE HEARING EXAMINER: Note the objection. Can you answer, Doctor?
A. As I just said, I expect that his the current situation, the disc herniation, is a direct continuation of the accident in 1995.

(Emphasis added.) This evidence seems to establish the causal connection between the 1995 and 1997 injuries even under the reasonable medical certainty standard which the Division asserted was applicable.
Pino's family practitioner, Dr. S., also established the connection in his testimony in which he reported:
Q. Dr. [S.], do you have an opinion as you sit here today, to a reasonable degree of medical probability, as to whether [Pino's] present back condition arises out of his June, 1995 injury * * *?
A. I sure think it does. Now, I think we should mention that I've sent [Pino] for physiotherapy, that we sent [Pino] to Dr. [V.], who's a neurosurgeon, to Dr. [G.], who's a neurosurgeon, and letters from them indicate that they felt that was, the disc was part of the original injury.
* * *
Q. And, Dr. [S.], can you tell us what it is in Dr. [V's] * * * letter that causes you to state what you testified to earlier concerning the relationship?
A. Well, on the second page [Dr. V.] says, I expect his initial accident of June, 1995 weakened the disc and created a disc bulge. * * *
* * *
Q. And, Doctor [S.], do you agree with the Division's assertion in this matter that it is speculative as to whether Mr. Pino suffered any injury to his L-5 S-1 disc in that June, '95 accident?
A. I think JuneYes, I think he caused the bulge of the disc in June of '95. It weakened the disc and predisposed him to have the ruptured disc.
Q. Do you feel you hold that opinion as speculative or is that opinion held to a reasonable degree of medical probability.

A. I think that's reasonable.
(Emphasis added.)
The Supreme Court of Utah dealt with a remarkably similar situation in Perchelli v. Utah State Indus. Commission, 25 Utah 2d 58, 475 P.2d 835 (1970). The claimant in that case had suffered a compensable back injury in 1966. Two years later, he sneezed and the disc herniated. Id. at 836. The agency in that case considered the sneeze to be an independent cause of Perchelli's disability, and compensation was denied. Id. at 837. The decision was reversed on appeal, and benefits were awarded. The court in that case said that if Perchelli had not sneezed, "some other episode would have triggered the actual disc herniation, requiring surgery." Id. The cough that triggered the herniation in Pino's back cannot be meaningfully distinguished from Perchelli's sneeze.
*687 The Division contends that the disc bulge could have antedated the injury in 1995, focusing on the inability of the doctors to "tell for sure" whether the 1995 accident initiated the bulge that resulted in the herniation in 1997. The Division contends that the subsequent injury bore only "a speculative relationship to the 1995 accident at work." This argument inverts the application of the requirement of substantial evidence to sustain the burden of proof. In effect, the Division seeks to compare speculation to the testimony of the treating physicians. We are satisfied that Pino met his burden not only of establishing the 1995 injury and the absence of a pre-existing bulge in his spinal column, but also the second compensable injury resulting from the injury at work.
We note the additional testimony of Dr. S.:
Q. So, if we don't know when the bulge occurred, but the bulge, in your opinion, contributed to the coughing incident precipitating the herniated disc in 1997, if we don't know when that bulge occurred, there's no way to say with any level of certainty that the June, 1995 accident is the cause of that herniated disc almost two years later, correct?
A. I think we're looking at this, since he had no symptoms, since he had never had trouble with his back, no previous history of injury that I know, there's no way of saying that he didn't have the problems, but because he's saying he had no symptoms I think we have to assume, unless we'd had an MRI before he started working [at his place of employment], I think we have to assume that he had no trouble. This was a pretty severe injury that he had, and I think you must assume that crushing between a bench and a car certainly could have precipitated this, but I have no way of telling for sure.
(Emphasis added.) Dr. V. also testified:
Q. And can you say with any certainty what caused Mr. Pino's disc bulge that was observed on the 7/19/95 MRI?
A. You can not say with certainty, but he was asymptomatic in 1995 and symptomatic thereafter.
We conclude that the hearing examiner failed to recognize that the issue before the agency was one of a second subsequent injury rather than simply one of proximate causation. Like a trial judge instructing a jury, the Office of Administrative Hearings has an obligation to invoke and apply the rules of law that support a claimant's theory of the case. It may be that this Court has explained the case in more detail and with more specificity than did Pino, but the fact remains that his theory of the case encompassed a second compensable injury. The hearing examiner should have invoked and applied the rule relied upon in the cited cases. Under the circumstances, the failure to do so constitutes a decision "not in accordance with law."
The case could be resolved by reversing the Order Denying Benefits and remanding it to the hearing examiner to consider the evidence in the light of the second subsequent injury rule. In this instance, however, the only medical testimony in the context of reasonable medical probability was to the effect that because Pino was asymptomatic prior to the 1995 injury, he did not have any prior weakness like a bulge in a disc in his back and that the bulge was the product of the 1995 injury. Since the medical testimony also ties the second injury to the 1995 accident by a reasonable medical probability, there is nothing in the record that would justify a different finding by the hearing examiner than those already made with respect to the testimony establishing the relationship between the 1995 injury and the 1997 surgery. Consequently, we reverse the Order Denying Benefits and the case is remanded to the Office of Administrative Hearings for the sole purpose of determining the appropriate amount of worker's compensation benefits that should be awarded to Pino.
Reversed and remanded to the Office of Administrative Hearings.
NOTES
[*] Retired November 2, 1998.
[1] The hearing examiner's Conclusions of Law specifically define preponderance of the evidence: "A `preponderance of the evidence' is defined as `proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence.' Scherling v. Kilgore, 599 P.2d 1352, 1359 (Wyo.1979)."